### National Industrial Fire Insurance Company v. Great Southern Fire Insurance Company.

(Decided October 9, 1917.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Licenses—Occupation Tax—Section 4224, Kentucky Statutes, imposing a license tax on every individual or firm, except banks and trust companies, engaged in buying or selling notes, bonds, stocks or other securities, applies to one who had contracted to and did, between June and December, 1913, sell shares of stock for another, although but one sale was effected.

2. Licenses—Enforcement of Contract.—Under section 4224, Kentucky Statutes, providing that before any individual or firm, except banks or trust companies, shall engage in the business of buying or selling notes, bonds, stocks, or other securities, he shall procure a license so to do and pay the tax thereon, and providing that a failure to comply with these provisions shall be a misdemeanor, it is unlawful to engage in such business without license so to do and contracts made in carrying on such business without a license are void and unenforceable.

O'DOHERTY & YONTS for appellant.

GARNETT & VAN WINKLE and KOHN, BINGHAM, SLOSS & SPINDLE for appellee.

Opinion of the Court by Judge Clarke—Affirming.

Appellant, plaintiff below, instituted this action to recover damages for the breach of a contract, by the terms of which defendant authorized plaintiff to accept, between June 18, 1913, and December 31, 1913, subscriptions for not exceeding 3,000 shares of defendant's capital stock at not less than $20.00 per share, the plaintiff to receive as commission for its services the difference between the selling price and $16.00 per share. It was alleged in the petition, after setting up the contract, that, within the time specified, appellant procured a purchaser for 2,000 shares of the capital stock of the de-

fendant at $25.00 per share, but that, in violation of its contract, the defendant refused to issue the stock. The defendant demurred to the petition, upon the ground that it showed that plaintiff was liable for license taxes both to the state and to the city of Louisville under section 4224, Kentucky Statutes, and an ordinance of that city, and that it failed to allege that plaintiff had procured such licenses from the state and city. This demurrer was sustained. Plaintiff declining to plead further, a judg-ment dismissing the petition was entered; and from that judgment this appeal is prosecuted.

Counsel agree that the only questions raised on this appeal are: First, whether or not the plaintiff was liable for the license taxes; and, second, if liable therefor, whether or not its failure to pay them invalidated the contract sued on. No question is made here of the propriety of raising this question by demurrer, although, as appears from the written opinion of the trial court, the question was there urged. It seems to have been waived here and we will, therefore, refrain from its discussion.

1. Upon the first proposition, counsel for plaintiff insist that the allegations of the petition and the contract sued on not only do not show that the plaintiff was liable for the license taxes, but, upon the other hand, show that it was not liable therefor; that both the averments of the petition and the contract show that plaintiff was not engaged in the business of buying and selling stocks and other securities, within the meaning of the statute and ordinance; that in a particular instance and by a particular contract only did it undertake to secure subscriptions for the capital stock of the defendant; and that the statute and ordinance apply only to those engaged in buying and selling stocks and other securities as a business or profession. In support of this contention, counsel cite Gast v. Buckley, 23 R. 992, in which it was held that an ordinance of the city of Louisville, requiring the payment of a license fee for the privilege of buying claims against the city, was void, for the reason that a party's right to buy claims could not be so qualified by ordinance where he purchased for himself only, and this without regard to the amount of the claims so purchased by him. Clearly this case is not authority here, for plaintiff was not purchasing the stock for its own account, but had a contract, and was undertaking to sell the stock in the defendant company to whomsoever would buy it. Nor is the case of Bitzer v. Thompson, 20 R. 1319, also relied

upon by appellee, applicable to the facts here, for in that case it was simply held that one, purchasing claims against the city of Louisville for himself, was not liable for the license fee.

It is argued, however, by counsel for appellee that, if a license fee could not be required of one who buys stock and other securities for himself, by a parity of reasoning, a corporation could not reasonably be required to procure a license for obtaining subscriptions for, or selling, its own stock, and whether it acts directly, or through an agent for that purpose, is wholly immaterial. This reasoning is, no doubt, sound and would absolve the defendant from liability for the license taxes, but has no application to the appellant, for, manifestly, any one who engages to sell stocks and other securities for another becomes his agent for that purpose, and that fact alone would not relieve him from the necessity of procuring a license so to do, if the license was required by the statute.

Nor can we agree with the contention of counsel for appellee that but a single transaction was contemplated by the contract, which, if true, would no doubt exclude plaintiff from liability under the statute and ordinance. By the terms of the contract, plaintiff undertook, during a period of more than six months, to sell for the defendant 3,000 shares of its capital stock, at not less than $20.00 a share, to whomsoever would buy, and this proves conclusively that, during that period, plaintiff was engaged in the business of buying and selling stocks to the general public. The mere fact that but one sale was effected, so far as the petition discloses, does not alter the fact that plaintiff was, from June 18th to December 31st, 1913, engaged in the business of selling stocks for another to the general public, which rendered it liable for the payment of both the state and city license taxes.

2. It is argued for appellant that the statute and ordinance are purely revenue measures, and, in nowise, police measures, and, therefore, even though plaintiff was liable for the payment of the license taxes, its failure to pay them did not render the contract sued on illegal. This presents a question that has been a subject of much discussion and diversity of opinion in this and other jurisdictions, but, under recent decisions of this court, the question seems to have been definitely settled in this state. Section 4224, Kentucky Statutes, which provides for the license, is, in so far as applicable, as follows:

"Before engaging in any occupation or selling any article named in this subdivision . . . the person desiring to do so, shall procure license and pay the tax thereon as follows: . . . on each corporation, individual or firm, except banks or trust companies, whether resident in this state or not, engaged in buying or selling notes, bonds, stocks or other securities, twenty-five dollars.

"On each broker or commission merchant, other than a liquor broker, twenty-five dollars. . . . .

"Any person or corporation who shall fail to procure the license as hereinabove required, or who violates any of the above provisions, shall, on conviction, be fined not less than twenty-five nor more than one hundred dollars for each offense."

The statute does not, in express terms, declare that contracts made in violation of its provisions shall be void; but, in construing section 571, Kentucky Statutes, requiring corporations, other than foreign insurance companies, to file a statement in the office of the Secretary of State before doing business in this state, this court held that, although the statute did not, in express terms, declare that a contract made in violation thereof should be void, this did not weaken the effect of the statute as a prohibition against the enforcement of contracts made by corporations in violation of its provisions.

In the case of Fruin-Colnon Contracting Co. v. Chatterson, 146 Ky. 504, upon this question this court said:

"The statute does not provide that contracts entered into before it has been complied with, shall be void or non-enforceable, nor does it use any language in reference to the contract; but, when a statute makes it unlawful to do business under certain conditions, it seems to necessarily and logically follow that the doing of the business under the prohibited conditions is in itself unlawful. When the doing of the act is made unlawful, there is no reason why the statute should also declare that contracts made in violation of it should also be unlawful. When the law prohibits a thing, it is unlawful to do it, and the courts should not lend their aid to the enforcement of prohibited contracts. Courts are established to afford remedies to litigants who seek relief growing out of lawful transactions, and not to aid those who would invoke their assistance to enforce contracts made in violation of law. Their chief purpose is to secure the observance of laws enacted for the safety and

protection of life and property, and the general well-being of the people, and it would be a startling departure from this purpose if they should also give relief to parties who were seeking to enforce contracts made in violation of law. Such a course of procedure would be a perversion of justice and convert the courts into instruments to aid lawbreakers in place of punishing them.''

In the more recent case of Oliver Co. v. Louisville Realty Co., 156 Ky. 628, this court, quoting and approving the above excerpt, in addition said:

''The fact, however, that the statute does not expressly declare that contracts made before complying with the section shall be void or not enforceable, does not weaken the effect of the statute as a prohibition against the enforcement of contracts made by a corporation in violation of the statute. In other words, the declaration of the statute that it shall not be lawful for any corporation to carry on any business in this state until it shall have observed the requirements of the statute, and the imposition of a penalty for engaging in business in violation of it, has the same effect and accomplishes the same end as if the statute had expressly declared the invalidity of contracts made without observing its conditions.''

In the still more recent case of Hunter v. Big Four Auto Co., 162 Ky., 778, after citing with approval the two cases quoted from above, this court upon the same question said:

''The case before us, however, comes not only directly within the letter, but directly within the intention, of the statute. The statute was intended to prohibit exactly what the plaintiffs were doing, unless they filed the certificate required. The legislature undoubtedly had the power to enact this statute and prescribe a penalty for its violation. And when the legislature, within its authority, enacts a law making it a punishable offense to do certain things, it may be considered as a closed question that this court will not lend such aid to the persons doing the prohibited things as will enable them to violate the law with impunity.''

It is true that in none of these cases was the particular statute involved that is here being considered, and that the statutes under consideration were police regulations and not revenue measures, but the decisions were not based upon any distinction between a revenue statute and a police regulation, but upon the ground that, when

the legislature, within its authority, enacts a law making it a punishable offense to do certain things, the courts will not lend such aid to the person doing the prohibited thing as will enable him to violate the law with impunity, that is, enforce his contract. So, it would seem clear that, while in this state the distinction was formerly made between the legality or illegality of contracts entered into in violation of a statute that did not expressly declare such contracts void, depending upon whether the statute involved was a revenue measure or a police regulation, that distinction is no longer recognized. However, even if that rule were still recognized applying it to the statute under consideration to determine whether it is a revenue measure or a police regulation, it must be held to be not only a revenue measure, but a police regulation as well.

In the case of Smith v. Robertson, 106 Ky. 472, this court approved the following rule for determining whether a statute was for revenue only and whether contracts in violation thereof were void:

"That, where a contract is prohibited by statute, it is immaterial to inquire whether the statute was passed for revenue purposes only, or for any other object. Secondly, that, when the question is whether the contract has been prohibited by statute, it is material, in construing it, to ascertain whether the legislature had in view solely the security and collection of revenue, or had in view, in whole or in part, the protection of the public from fraud in contracts, or the promotion of some object of public policy. In the former case, the inference is that the statute was not intended to prohibit contracts, in the latter that it was. Thirdly, that in seeking for the meaning of the lawgiver it is material also to inquire whether the penalty is imposed once for all on the offense for failing to comply with the requirements of the statute, or whether it is a recurring penalty repeated as often as the offending party may have dealings. In the latter case, the statute is intended to prohibit contracting, and the contract is therefore void; but in the former case such is not the intention, and the contract will be enforced."

Under the statute before the court, at that time, a person who furnished the services of an unlicensed stallion for hire or compensation, was liable to indictment and subject to a fine for each offense. The statute was held to be a police regulation, and contracts made in violation

thereof were void and unenforceable. Under the statute and the ordinance involved here, the penalty prescribed is not once for all, but the offending party is liable to indictment and subject to a fine for each offense. So, even under the rule that formerly existed, the statute and ordinance must be construed to be a police regulation and the contract sued on unenforceable.

Counsel for appellant make their chief reliance upon the case of Lindsey v. Rutherford, 17 B. Monroe 246, in which it was held that, dealing in bills of exchange without a license, as provided by Revised Statutes, 556, art. 4, is neither *malum in se* nor *malum prohibitum,* and contracts for their sale and purchase are not prohibited by the statute, and are, therefore, valid and binding, though the purchaser or seller may have incurred a penalty. Under that statute, not now the law, the penalty prescribed for the failure to procure a license was that the offender "shall forfeit and pay to the Commonwealth one thousand dollars." The penalty for failing to comply with the requirements of the statute was imposed once for all, and, under the rule approved in Smith v. Robertson, *supra,* that statute was properly construed to be purely a revenue measure. That case is not authority in the case now before us even under the rule then recognized, for the statute under consideration prescribes a recurring penalty, repeated as often as the offending party may be guilty.

So, whether we recognize a distinction between statutes for revenue purposes only and those designed for the protection of the public in determining the validity of a contract, or whether we disregard such distinction, the contract sued on must be held to be void and unenforceable.

Wherefore, the judgment is affirmed.