## Howard v. Joseph Lebby and Rose Lebby, His Wife.

(Decided January 19, 1923.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1.  Licenses—Occupation Tax—Municipal Ordinances.—A city of the first class, by virtue of legislative enactment as authorized by section 181 of the Constitution, has the power to levy and collect an occupation tax without reference to the nature of the trade, occupation or profession; but that power may not be so unreasonably or arbitrarily exercised as to amount to confiscation of property or denial of the right to engage in a particular trade, occupation or profession innocent in itself.

2.  Licenses—Occupation Tax—Police Power.—A city ordinance imposing a tax on an occupation cannot be justified as a proper exercise of the police power of the city unless it appear that the imposition of the tax tends to promote the public health, morals, safety or welfare.

3.  Licenses—Occupation Tax—Police Power.—The imposition of a tax by a city of the first class on the common occupations of life, harmless in themselves, cannot be sustained as a police regulation, but can only be upheld as a revenue measure when authorized by legislative enactment.

4.  Licenses—Occupation Tax.—Where an ordinance of the common council of a city of the first class imposed an annual license fee of $25.00 on contractors, including painters, and provided that it should be unlawful for any person to follow the business of contracting within the city without first having paid the license required, the failure of one engaged in that pursuit to take out a license does not operate to defeat his claim for compensation for the painting of a house within the city.

5.  Licenses—Occupation Tax—Public Health.—A municipality, in the interest of the public health, morals or welfare, may grant or withhold a license to engage in a particular occupation, and where it has exercised this authority by ordinance, contracts made in the course of the occupation by one who has not procured the required license are void. But if the license is required as a revenue measure, without restriction as to the kind or class of persons entitled to pursue the occupation, the forbidden act is not the pursuing of the occupation but the failing to pay the license fee before pursuing it.

6.  Licenses—Occupation Tax—Public Health.—If an ordinance taxing an occupation is designed as a revenue measure, the failure to pay the tax by one engaged in the occupation will not vitiate his contracts made in pursuit of his occupation, unless the ordinance in express term declares that such contracts shall be void. But if the ordinance is designed to protect the public health,

morals or welfare, a nullification of all contracts made by the unlicensed person in the course of the taxed occupation is a necessary consequence of the failure to obtain a license.

J. J. HANCOCK for appellant.

OPINION OF THE COURT BY JUDGE MOORMAN—Reversing.

The question presented on this appeal is whether an ordinance of the common council of the city of Louisville, imposing an annual license fee of $25.00 on appellant as a contractor, and providing that it shall be unlawful for any person to follow the business of contracting within the city of Louisville without first having paid the license required, operates to defeat appellant's claim for compensation for painting appellees' house in the city of Louisville.

Appellant filed suit in the circuit court to recover the contract price for painting the house, and to be adjudged a lien on the property improved, under section 2463 of the Kentucky Statutes. By answer appellees pleaded the ordinance in question as a bar to any recovery. A demurrer to the answer was overruled, evidently on the theory that appellant's failure to procure a license rendered the contract void. The petition was dismissed and the contractor has appealed to this court.

It has been frequently held in this state, under section 181 of the Constitution, that the General Assembly may grant to a municipality the power to levy what is commonly known as an occupation tax, within its territory, without reference to the nature of the trade, occupation or profession; and further, that the power so granted may be utilized to the fullest extent, except that it may not be so unreasonably or arbitrarily exercised as to amount to confiscation of property or a denial of the right to engage in a particular trade, occupation or profession. Hager v. Walker, 128 Ky. 1; Metropolitan Life Ins. Co. v. City of Paris, 138 Ky. 801; and Weyman v. City of Newport, 153 Ky. 487. Such taxes may be imposed by municipalities in this state for the purpose of revenue or, in allowable cases, as a means of controlling or limiting the exercise of a particular vocation. In the latter instance the imposition may result from the exercise of the police power. The first question, therefore, to be determined here is, was the ordinance primarily designed as a revenue measure, or as a police regulation?

The police power, with respect to the state or municipality, extends only to the protection of the lives, health, comfort or welfare of the public, and an ordinance imposing a tax on an occupation cannot be justified as a proper exercise of that power unless it appear that the requirement of a license tends to promote the public health, morals, safety or welfare. In other words, the law does not countenance the invasion of the rights of property or business under the pretext of a police regulation when it is manifest that such is not the object of the enactment. 17 R. C. L. p. 541. And while revenue may incidentally result from the exercise of the police power, nevertheless laws or ordinances that exact license fees or impose regulations on the common callings of life or the ordinary trades and pursuits, innocent in themselves, cannot be sustained on that authority. 17 R. C. L. 551; Tolliver v. Blizzard, 143 Ky. 773.

Appellant is a painter in the city of Louisville. His occupation is not *malum in se,* but it is one that has been followed in all communities from time immemorial. From no rational point of view can it be regarded as deleterious to the health, morals or welfare of the public. It is not unlawful to engage in the business of painting houses, and indeed we can conceive of no theory on which a regulation or prohibition of that calling could be sustained under the guise of a police regulation. Hence it seems clear to us that the ordinance was obviously intended as a revenue measure and can be sustained on no other ground.

In view of the undoubted object of the ordinance, the question arises, can appellant, an unlicensed person, enforce his contract made in the line of his vocation, although the ordinance provides that it is unlawful for him to follow his occupation without first having paid the license fee required by the city? There are divergent views in the authorities as to whether it is competent for a city, as a means of enforcing a revenue measure, to declare void contracts made in violation of such measures. That question, however, is not here, as this ordinance does not provide that contracts made by an unlicensed follower of the occupation taxed shall be void. All that it purports to do is to impose a license tax, and, as a means of collecting it, provides that it shall be unlawful to engage in the occupation taxed without first obtaining the license. It does not declare in express terms, nor in our opinion by implication, that contracts made without

license to engage in the business shall be void. In Ruling Case Law, vol. 17, p. 558, the author, speaking of the non-payment of license fees as affecting contracts, says:

"Perhaps the better and more reasonable rule is that, where prohibition of the business is implied from a penalty imposed and there is no declaration in the statute making the prohibited act void, the doing of such act is not illegal, and a recovery may be had on the contract."

With this statement we are in accord, and while it must be admitted that there is conflict in the decisions on this subject, the better reason, in our judgment, supports the text just quoted.

In Vermont Loan & Trust Co. v. Hoffman, 37 L. R. A. 509, the Supreme Court of Idaho had under consideration a statute of that state, requiring all persons engaged in the business of loaning money at interest to pay a license tax before commencing such business, and making it a misdemeanor to fail to obtain a license. The trust company brought suit to foreclose a mortgage executed by Hoffman, and the defense was that the trust company had not complied with the license statute. The court held that the statute was a revenue measure and not a police regulation, and that a recovery could be had. In the opinion it is said:

"There is nothing in our statutes which says that it is unlawful to follow the business of loaning money at interest. Such business is not *malum in se,* nor is it *malum prohibitum.* Anyone may conduct the business, but, under our statutes, if he does so, he must obtain the license; and if he carries on such business without paying the license tax and obtaining the license, he is guilty of a misdemeanor. The offense consists, not in doing the business, for that is not prohibited, but in failing to pay the license tax. The statute was passed, not to protect the public, not to protect the borrower, nor to prevent the loaning of money at interest, but for the purpose of raising the revenue to be derived from the license taxes to be collected from those persons who should engage in the business of loaning money at interest."

The same doctrine was announced in Manker v. Tough, by the Supreme Court of Kansas, 19 L. R. A. (N. S.) 675, where it was held that a real estate agent who had failed to take out a license might recover on a contract of sale, since the statute requiring the license was a revenue measure and not a police regulation.

In Hughes v. Snell, 34 L. R. A. (N. S.) 1133, a license tax was imposed by the city of Oklahoma on real estate agents, and the ordinance provided that it should be unlawful for any person, firm or corporation to engage in that business without having complied with the provisions of the ordinance. The conclusion of the Supreme Court of Oklahoma was that it was not the intention of the ordinance to make the contract in that case void, but that the whole end and purpose of it was to impose a license tax for the purpose of raising revenue for the city, and hence a contract made by the unlicensed real estate dealer was not vitiated by reason of the fact that he had failed to comply with the ordinance. Among the many supporting authorities cited was Harris v. Runnels, 12 Howard 79, in which it was held that a statute of the state of Mississippi, respecting the sale of slaves brought into that state, did not make void a note given for the price of the slaves. Although the court in that case recognized the validity of the statute as a police regulation, it said:

"It is true that a statute, containing a prohibition and a penalty, makes the act which it punishes unlawful, and the same may be implied from a penalty without a prohibition; but it does not follow that the unlawfulness of the act was meant by the legislature to avoid a contract made in contravention of it."

The test is, what was the intention of the enacting authority? If the license is authorized under the police power and may be granted or withheld by the municipality in the interest of the public health, morals or welfare, then a contract made by one who has not procured a license is void, because as to him the pursuing of the occupation is illegal; but if the tax is imposed as a revenue measure only, without restriction as to the kind or class of persons entitled to a license, and necessarily, therefore, without relation to the public health, morals or welfare, the infraction of the ordinance consists, not in pursuing the occupation, but in failing to pay the license fee before pursuing it.

The Supreme Court of Colorado, in Wood v. Krepps, 1915B Lawyers' Reports Annotated, p. 851, in a very comprehensive opinion, reviewed the numerous authorities touching this subject, and held that the contract of a pawnbroker, in loaning money on a chattel mortgage, was not rendered invalid by reason of his failure to com-

ply with the municipal regulations for the conduct of his business. The ordinance involved there was one which declared that it should be unlawful for any person to commence or carry on in the city any of the designated businesses, including pawnbrokers, without first having procured a license so to do. In that opinion it was said:

"There is no law in this state making the business of loaning money on personal property illegal. It is a legitimate branch of commercial business which the state has only regulated to the extent of fixing the maximum rate of interest. The business itself, however, is not affected. It is neither *malum in se* nor *malum prohibitum*. The ordinance does not pretend to prescribe or prohibit the business. Anyone may carry it on, the only condition attached to doing so being that the person engaging in it must obtain a license. The only penalty imposed is that, if he does not do so, he will not only be subject to a civil action at the instance of the city, but likewise to a penalty in a criminal proceeding for doing business without having obtained it. The carrying on of the business itself is not prohibited; it is only the carrying on of it without a license. The prohibition runs against the person engaged in it without a license, not against the business itself."

The views expressed in the authorities referred to, in our opinion, are sound. That there are decisions to the contrary cannot be denied, but from an examination of those decisions it will be found that many of them are based on a statute or an ordinance containing a provision expressly vitiating contracts made by the one who has not procured the prescribed license. In other words, they rest on provisions declaring in terms that contracts made by one not licensed to engage in the business shall be void. The ordinance here does not declare that a contract made by an unlicensed painter or contractor shall be invalid. The purpose of the ordinance, as we have seen, was to secure revenue. As applied to the occupation of painting, we think it could not be upheld on the ground of a police regulation. Appellant has a perfect right to engage in the business of painting, but the city, in the exercise of its right to collect taxes, may require that he pay a license fee for the privilege of following his lawful occupation within its confines. The offense committed, therefore, was not the entering into a contract for painting, an innocent and legitimate act, but the

failing to pay the license fee before engaging in business of that kind. But even if the making of the contract itself constituted a violation of the ordinance, it does not follow, under what we regard as the better reasoned opinions, that the unlawfulness of the act avoids the contract. We think it does not, in view of the purpose of the ordinance.

Baskett v. Jones, 189 Ky. 391, does not, when examined in the light of the question involved in that case, oppose the conclusion stated. While there is language in that opinion that might be construed as indicating views contrary to those expressed here, there is in fact nothing decided in the case that is opposed to the conclusion that we have reached. That decision was based on the ground that the ordinance under consideration in that case was a revenue measure and by its terms was inapplicable to the transaction. There a license fee was imposed, and it was provided that, before engaging in the business of the taxed occupation, the dealer should pay the tax and obtain a license. An ordinance of that kind just as effectively renders unlawful the pursuit of the taxed occupation without a license as does an ordinance, such as we have, that expressly states that the pursuit of the occupation shall be unlawful. We are unable to differentiate the practical effect of the phraseology of the two. In neither case are contracts made by an unlicensed person, in pursuing his occupation that is subject to the tax, declared illegal or void. And where the ordinance is purely a revenue measure we do not think it should be treated as vitiating contracts made by an unlicensed person unless it contains a specific declaration to that effect.

Nor are the views that we have stated militant to the decisions of this court, construing section 571 of Kentucky Statutes, and holding that contracts made by corporations doing business in Kentucky are vitiated by failure to comply with that section of the statute. That provision of the law is purely a police regulation as distinguished from the ordinance in question, which is a revenue measure; and the test is whether the law was enacted to obtain revenue, without restriction ˙ on the class or kind of persons from whom it is derived, or whether, besides or altogether, it was designed to protect the public morals, etc. In the former case the penalty is sufficient to secure the revenue and is presumably an

ample substitute for the license fee, whereas in the latter case a nullification of the contract is a necessary consequence.

For the reasons stated it is our opinion that the amended answer did not state a defense to the cause of action asserted in the petition. The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.