## West, Executrix v. Kirtley.

(Decided December 14, 1923.

### Appeal from Franklin Circuit Court.

1. Brokers—Plaintiff Held Employed Only to Interest Persons Desiring Oil Leases.—A letter: "If you can help me to lease this land, I will pay you 6 per cent of the lease price. . . . If you find any one who wants to lease this land, just turn them over to me, and I will take care of your com. (commission)" held to

require the addressee only to interest some one in taking a lease, and a commission was earned where he put the writer in touch with persons who subsequently leased the property.

2. Brokers—License Not Necessary for One Entering Into Single Contract.—Ky. Stats., section 4224, does not require one to obtain a brokerage license before he can enter into a binding contract for a single transaction.

HAMILTON & POLSGROVE for appellant.

LESLIE W. MORRIS for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

In January, 1920, I. T. West was the owner of a tract of something over 600 acres of land about the corner of the three counties of Lee, Owsley and Jackson, and lying partly in each.

He desired to lease the same for oil and gas development. Accordingly on the 6th of January, 1920, he wrote a letter to appellee Kirtley wherein he referred to a previous conversation between them about this tract of land, and said:

"This land is nearly surrounded by producing oil wells. If you can help me to lease this land I will pay you 6% of the lease price. I want $16.00 per acre for an oil and gas lease on this land. . . . If you find any one who wants to lease this land just turn them over to me and I will take care of you in your com (commission)."

West and Kirtley were each residents of Frankfort, and Kirtley was then, and had been for some time, field agent for two oil companies in the Lee county field, and consequently was in touch with a large number of oil people. It is apparent that between the date of the letter of January 6th and February the 27th Kirtley had put West in touch with an oil man by the name of Pember, for on the latter date West wrote to Kirtley:

"Your letter came this morning. I have just written to Mr. Pember of Winchester, Ky. If any trade results from this I will take care of you."

Some time in March, 1920, West died, and up to that time, while there had been negotiations between him and Pember, no trade had resulted.

After the death of West his widow and executrix, together with his heirs at law, gave a power of attorney

to Bergman, his son-in-law, to lease this tract of land for oil and gas development. On the 2nd of April, 1920, Kirtley, together with Pember, whom Kirtley had theretofore caused to be interested in the matter, went to see Bergman at Irvine. There Kirtley exhibited to Bergman the letters from West from which we have quoted, and the latter assured him that his agreement with West would be carried out. On that same day, and clearly pursuant to that agreement, Bergman as such attorney in fact, executed to Pember a ten days' option to purchase a lease on the lands for $12,000.00, and this was done in the presence of Kirtley and with his approval.

Pember very shortly thereafter interested with him another oil man by the name of Reed, and between the two they approached and interested J. Fred Miles, of Lexington, Ky., who at the time was the general manager of the Swiss Oil Company.

Pember and Reed reached an agreement with Miles, on or before the 10th of April, by which he was to take the property under the terms of the option, and on that day notified Bergman over the phone of that fact. The Pember option did not expire until midnight on the 13th of April, but on that day, and before the expiration of the Pember option, and after he had notice on the 10th that J. Fred Miles of the Swiss Oil Company had agreed to lease the property, he on that day executed a new option to one Felix M. Miles, a brother of J. Fred Miles, and accepted from him a cash payment of $1,000 to be credited on the purchase price when the option was exercised, which it later was. Felix M. Miles was a brother of the J. Fred Miles with whom Pember and Reed first dealt, and with whom they reached an agreement, and the Miles brothers were each officers or agents of the Swiss Oil Company.

Bergman declined to pay any commission to Kirtley, and this is an action by Kirtley for his commission under the terms of his contract with West, which was ratified and reaffirmed by Bergman, the agent of the estate, after West's death.

On a jury trial there was a verdict for the plaintiff upon which judgment was entered and this appeal results.

The answer was a traverse, and in a separate paragraph it was pleaded that plaintiff was a broker and that he at the time of the transaction involved had no license as such, and could not therefore maintain this action.

The facts we have recited are practically undisputed, the only material difference in the evidence being that Bergman denies he received any notice on the 10th of April, or other time, that the deal had been closed with J. Fred Miles. The evidence, however, on this issue is satisfactory, for not only are the facts testified to by Pember and Reed, but it is undenied that they each received through J, Fred Miles commissions from the purchaser for closing this deal, and that would appear to be convincing evidence that it was through their instrumentality the deal was finally made.

It will be observed from the language of the West letter that he did not in the ordinary sense employ Kirtley as a broker; but on the contrary he retained control of the matter himself and merely employed Kirtley to help him (West) in making the lease, or to find some one who wanted to lease, for he said: "If you find any one who wants to lease this land just turn them over to me and I will take care of you in your com. (commission.)" West knew Kirtley from his situation and the business he was engaged in came in contact with oil men and he was willing to pay him his compensation for putting him in touch with somebody who would consummate such a deal, while he expected to complete the matter and control it himself after being so put in touch by Kirtley with such parties.

There can be no doubt from the evidence that Kirtley in the first place brought about negotiations between Pember and West, and it is reasonably clear that Pember and his associate Reed were the moving causes in bringing about the consummation of the deal; and when those things were done Kirtley had done all that West employed him to do, and had earned his compensation.

The evidence shows that appellee was not engaged in the brokerage business; that he had never before engaged in a similar transaction for the purchase or sale of lands for another. It is therefore apparent that the license fee of $25.00 assessed against such brokers, under section 4224, Kentucky Statutes, was not required of him before he could enter into a binding contract for a single transaction.

All the evidence shows he was not engaged as such broker, and was not in fact employed as a broker to sell the land for West; but the agreement between them was merely that if he would put West in touch with oil men who would lease his property he should be paid

a certain percentage of the lease price, while West himself would conduct the negotiations and close the deal.

At any rate a single transaction by one for another for compensation, when he does not profess to and does not in fact follow the brokerage business, does not constitute him a broker in such sense that he must have a license before he can enter into a binding contract. National Industrial Fire Ins. Co. v. Great Southern Fire Ins. Co., 177 Ky. 59; Chaffee v. Wedimen, 139 A. S. R. 236 and note; Jackson v. Hough, 38 W. Va. 233; 4 R. C. L., page 246.

The instructions submitted in precise language, and practically in the words of the contract, the simple issue whether appellee had helped or assisted in procuring the sale which was consummated, and whether such help or assistance was of material benefit in bringing about the same. There was no other issue and no other should have been submitted.

Judgment affirmed.