### Tussey v. Felty.

(Decided December 19, 1924.)

### Appeal from Boyd Circuit Court.

Brokers—Broker's Failure to Procure License Held Not to Forfeit Right to Commissions.—Notwithstanding real estate broker's failure to procure and pay for license required by Ky. Stats., section 4224, as amended by Acts 1920, c. 158, he is not precluded from recovering commissions on sales; the act being purely a revenue measure.

J. B. ADAMSON for appellant.

S. S. WILLIS for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Reversing.

Appellant brought his action against appellee for a fee alleged to be due him as a real estate agent for services in the sale of appellee's property, under the terms of a contract between them.

Defendant answered in two paragraphs, the first of which was a traverse, but in the second he relied upon, as

an affirmative defense, the fact that appellant had not complied with the provisions of the statute in this state requiring him before engaging in the occupation of a real estate agent to pay a license tax, and providing a penalty for his failure so to do, and relied upon such failure as a bar to his right to maintain this action.

The lower court overruled a demurrer to the second paragraph, and plaintiff declining to plead further his petition was dismissed, and he has appealed.

The question then is under our statute prescribing a license fee for real estate agents, and fixing a punishment for the failure to pay such license fee before engaging in such occupation, whether a contract made by such agent before paying the license fee may be enforced.

Section 4224 Ky. Stats., as amended by the act of March 1920 (chap. 158, Acts 1920), in so far as it affects real estate dealers, provides as follows:

> "No person, firm or corporation shall engage in any of the occupations or sell any of the articles named in this act until such person, firm or corporation shall have paid to the county court clerk of the county wherein such person, firm or corporation is engaged in such occupation or in selling such article, the license fees herein set out."

> "Real Estate Agent. On each real estate agent, ten dollars. Any person, firm or corporation who sells or leases real estate for a commission shall be construed to be a real estate agent within the meaning of this act."

> "Any person or corporation who shall fail to procure the license as hereinabove required, or who violates any of the above provisions, shall, on conviction, be fined not less than twenty-five dollars ($25.00) nor more than one hundred dollars ($100.00) for each offense."

The act to which the act of 1920 is an amendment was an act of 1906, and was chapter 22 of the Acts of that year, and was entitled "An Act Relating to Revenue and Taxation." It was a most comprehensive revenue act, and purported to legislate only on that subject, and among other things in a subdivision dealt specifically with license taxes on numerous trades and occupations,

and prescribed a penalty as set forth in the third quotation above.

The first two quotations are taken from the amendatory act of 1920, but as there is in that amendment no penalty prescribed other than is fixed in the original act of 1906, presumably the penalty originally fixed remains undisturbed.

Prior to the opinion in Howard v. Lebby, 197 Ky. 324, there was some confusion in the opinions of this court on the question involved. One line of cases seemed to hold that even in a purely revenue producing statute imposing license fees upon trades and occupations a prohibition against engaging in such business before procuring the license vitiated any contract made before such time, and that same was unenforceable. Another line of cases took the more reasonable and logical view that a purely revenue statute designed only to produce revenue, even though it prohibited engaging in the business before procuring the license, did not invalidate or make non-enforceable a contract made before the license was procured, and that where the trade or occupation is not *malum in se* or *malum prohibitum*, the prohibition of such revenue act is against the person engaged in it without a license, and not against the business itself.

In Howard v. Lebby the whole question was gone into exhaustively, the authorities were extensively quoted and commented upon, and the court reached this conclusion:

"The test is, what was the intention of the enacting authority? If the license is authorized under the police power and may be granted or withheld by the municipality in the interest of the public health, morals or welfare, then a contract made by one who has not procured a license is void, because as to him the pursuing of the occupation is illegal; but if the tax is imposed as a revenue measure only, without restriction as to the kind or class of persons entitled to a license, and necessarily, therefore, without relation to the public health, morals or welfare, the infraction of the ordinance consists, not in pursuing the occupation, but in failing to pay the license fee before pursuing it."

Although that opinion dealt with a municipal ordinance, and not with a statute, we are unable to see any difference in principle, or any reason why the rule therein

finally announced should not apply to a revenue statute as well as to a revenue ordinance.

Certainly, as pointed out in some of the authorities discussed in that opinion the General Assembly or the municipal legislative authorities may even in the enactment of a purely revenue producing act or ordinance declare a contract made contrary to its provisions null and void so as to make the same unenforceable; but where in such enactment there is no such provision, and there is no invoking of the police power to regulate any occupation, then the act providing for the license fee becomes a purely revenue producing act and has for its purpose, not the regulation or enforcement of any rules governing the conduct of such trade or occupation, but merely the producing of revenue for public purposes.

The occupation of a real estate dealer is a legitimate one, and has always been so recognized; it is not bad in itself, and therefore in a purely revenue producing act, in the absence of explicit language it will not be assumed that the legislature intended to restrict or hamper the legitimate conduct of such business by the act of imposing a license fee upon those who engage in it. Manifestly the prohibition in such a statute is against the individual who engages in such business without procuring the license, and cannot and is not intended to affect the validity of any contract made between individuals, whether the agent does or not engage in the business without a license. Such an act is not regulatory in any sense; it does not purport to deal with the question of validity of agreements between individuals; it merely imposes for revenue purposes a license fee and prescribes a penalty for engaging in the business without such license.

But it is earnestly insisted that the opinion of this court in the case of National Industrial Fire Insurance Company v. Great Southern Fire Insurance Company, 177 Ky. 56, is contrary to this view, and specifically holds that section 4224 is regulatory, and therefore an exercise of the police power. We direct attention, however, to the fact that the opinion in that case was written prior to the enactment of the amendment of 1920. But wholly apart from that, we are of the opinion the court was in error in saying, if it may be so construed, that the original act of 1906 was regulatory in its provisions or in any way purported to deal with the police power.

Without pointing out the distinction between Howard v. Lebby and the last named case, it is proper to say that Howard v. Lebby is the last utterance of this court on the subject and was written out with a view to harmonize if possible the various apparently conflicting opinions and state the rule by which we would in the future be guided. Anything, therefore, in the case of National Industrial Fire Insurance Company v. Great Southern Fire Insurance Company which may be deemed to be in conflict with the case of Howard v. Lebby should not hereafter be followed.

Following, therefore, the rule stated in Howard v. Lebby, the demurrer to the second paragraph of the answer as amended should have been sustained.

The judgment is reversed with directions to sustain the demurrer, and for further proceedings consistent herewith.