## Black Motor Co. v. Baughman & Datron Ins. Agency.

Feb. 27, 1942.

164

Davis, Gilbert & Edwards for appellant.

James Sampson and H. L. Bryant for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

Prior to and at the time suit by appellee against appellant, the latter was engaged in the sale of motor vehicles; appellee was a general insurance agency, both located in Harlan. During 1936-37 appellee wrote insurance for the appellant, insuring its buildings, compensation, and other risks, so that at the time of suit the appellant owed premiums amounting to $3,665.50, for which recovery was sought.

Appellant answered denying the indebtedness and pleading counterclaim and set-off. From this time on to final disposition the procedure became a battle of pleading, amendments and counter-pleas going to the extent of rejoinders. During and following the period above mentioned, appellee wrote for the purchasers of cars, sold by appellant and for C. I. T. Corporation, a financing institution, fire, theft, collision and casualty policies, the premiums upon which, according to final pleading on the subject, amounted to $53,740.73, the Motor Company claiming under an alleged contract to be entitled to a percentage on the commissions of agency. Stripping them of what may be conceived to be nonessentials, we look to the pleadings on the law issue raised.

When submitted on demurrers to certain paragraphs of the counterclaim and set-off, and to demurrer to certain parts of Motor Company's replies, parties agreed that should the court sustain agency's pleas in avoidance, judgment should be entered in its favor for the amount sought. The court sustained the demurrer to the paragraph which set up counterclaim and overruled demurrer to agency's plea in avoidance; the Motor Company declining to plead further, the court dismissed counterclaim and set-off, and on appeal it is insisted that the counter-pleas presented a legal cause.

The Motor Company is not claiming any portion of commissions paid to or due agency on insurance policies issued to it, but for a division of agency's commissions on premiums collected on C. I. T. business, which the Motor Company secured for agency under a contract.

It is contended that in June, 1929, parties agreed that agency would write insurance for customers procured, secured and furnished to it by the Motor Company, on cars sold by it and financed through C. I. T. on policies covering fire, theft, collision and casualty risks, for which agency was to pay the Motor Company a sum equal to one-half of its commission, estimated to be 20% on premiums collected.

It appears there was an arrangement between Motor Company and C. I. T. whereby the former would transfer to the latter all its interest in its contracts of sales to customers, whereupon C. I. T. would pay to the Motor Company the unpaid purchase price on vehicles sold. The contract provided for finance charges, including the procurement of insurance coverage to be paid by the insured through the finance company, an arrangement, as is said, well known to agency, and which reflects the customary conditional sales contract, as applied to motor vehicles. Appellant contends that during the period, pursuant to the agreement, "it did secure said business and insurance for plaintiff and induced the finance company to place all coverage on vehicles sold by the Motor Company, with agency."

Issue was raised by agency's reply, which followed a motion to strike, and demurrer; neither passed on until pleadings had reached rejoinder stage. The reply, in so far as it related to the counterclaim, alleged that the agency was licensed under applicable laws relating to insurance, but that the Motor Company had never been licensed thereunder as an insurance agent, and that it was not a licensed agent writing the same character of business, or a nonresident agent authorized to write insurance on property in this state, or to write policies on property outside of the state.

It also negatived the idea that the Motor Company was claiming a distribution of surplus among policy holders; that it was not claiming for the furnishing of service or information "for the purpose of reducing" loss or liability, all as set out by way of exceptions in

Section 762a-19, Kentucky Statutes, and apparently negatived all other provisions of the statute which constitute exceptions to Section 762a-19, Kentucky Statutes, commonly called the "rebate statute."

Briefly, its contention is that as far as the laws are concerned it had the right to solicit, procure, furnish or secure for a licensed agent insurance business, and legally contract for a division of commissions on such business furnished, without violating any provision of the law, particularly Kentucky Statutes, Section 762a-19. Appellant contends that the alleged transaction between the parties did not constitute, in the sense as indicated in Section 762a-19, a rebate. The statute in terms sets out what is considered to be rebating, and a fair definition of almost universal application may be found in 32 C. J., Section 326, p. 1194, and by courts of our jurisdiction and others. Under the statute a division of commissions to any person, or in any manner other than as indicated in the section, is by inference prohibited.

It is not difficult for the court to determine under the applicable laws that the Motor Company in soliciting, procuring, securing or furnishing to agency customers for whom it was to and did write insurance, violated the Statutes, and while the appellant carefully pleads itself out of the provisions of the greater part of Section 762a-14, Kentucky Statutes, which defines "agent" and with which agency had admittedly complied, it does not plead itself beyond the pale of the last paragraph of that section, which provides:

"Any person authorized by any of the above mentioned agents, corporations, co-partnerships or individuals to solicit insurance shall be required to qualify as agent under this act." See, also, Section 633, Kentucky Statutes, Com. v. Gaither, 107 Ky. 572, 54 S. W. 956.

That appellant was engaged in soliciting, procuring for, securing and furnishing to agency contracts of insurance, is made the basis of its right to recover. Section 762a-17 provides that "no person shall do or perform any act as an insurance agent, *or* advertise or hold himself out as such agent, without holding a license in force as provided in this act," with expressed exceptions. Section 762a-15, Kentucky Statutes, provides certain prerequisites: There must be a verified application, giv-

ing answers to such questions as the department propounds, which questions no doubt are so framed that the answers thereto may assure the Commissioner that the applicant is a fit person to solicit, or to write, in his office or elsewhere, a contract which involves matters of property to considerable proportions.

Section 761, Kentucky Statutes, provides a schedule of fees for each agent. That the Statutes, with relation to insurance of all kinds, are intended to safeguard the rights of those dealing in this class of commodity, there can be little or no question, and as may be noted from reference to Section 762a-14c and 762a-14d, Kentucky Statutes. Certainly it is that these statutes were intended to be and are highly regulatory in respect of transacting insurance business through agencies and agents. See Section 762a-14d, Kentucky Statutes, and particularly Section 762a-20d, which declares that the purpose of the statute is to regulate the writing of insurance by "duly licensed resident local agents." The Statutes, while perhaps raising some revenue for the commonwealth, are nevertheless regulatory and penal, Kentucky Statutes, Section 720a-20c, and as a whole reflect the public policy of the Commonwealth in respect of this little understood (on the part of the insured) vast and far-reaching business.

The statute in respect to rebates, Section 762a-19, provides that nothing therein contained should prevent a licensed agent of this Commonwealth from dividing his commission with another licensed agent of the Commonwealth writing the same kind of insurance. In the face of that provision, taken in connection with provisions pointed out, there was a violation of that section in agreeing to divide commissions with one not a licensed agent. But appellant argues that since it is clear that the agency violated at least the intent of the law, it should not be allowed to set up a defense founded on its illegal act, when the Motor Company was innocent, and cites Miller & Damron v. Batten, 247 Ky. 339, 57 S. W. (2d) 33. We held there that Batten was entitled to collect a brokerage fee for the sale of certain oil leases, though he held no license as a broker. There were two distinguishing points. The sale was an isolated transaction. West v. Kirtley, 201 Ky. 335, 256 S. W. 724. We said:

"Furthermore, it is apparent that the ordinance re-

lied upon [requiring license] is simply a revenue measure and not a police regulation, and consequently a real estate agent who had not procured a license would not be precluded from recovering his commission.'' [247 Ky. 339, 57 S. W. (2d) 35].

We went to some length in the recent case of Board of Education of Ferguson School District v. Elliott, 276 Ky. 790, 791, 125 S. W. (2d) 733, in distinguishing the principles laid down in the Batten case, supra, and Howard v. Lebby, 197 Ky. 324, 246 S. W. 828, 30 A. L. R. 830; Tussey v. Felty, 206 Ky. 506, 267 S. W. 765. In the School District case, after reference to the above cases, we held that Elliott, an architect who had planned the building, could not enforce his contract, because he had failed to comply with Sections 73-1 to 73-15, Kentucky Statutes, requiring a license to pursue his business as an architect. In plain and unequivocal terms we held that where the statute requiring license was not merely a revenue statute, but one enacted to safeguard health, life, or property, or to promote the public welfare, ''one assuming to act as an architect who had not procured license could not maintain an action to enforce contract for services rendered by him.''

While it is not specifically stated in the insurance laws that license was required for the purpose of promoting public welfare, we have no difficulty in determining that the safeguards thrown around those engaging in the insurance business, in any capacity, by the insurance statutes, were none the less for the promotion of the general welfare of the public, and to protect property rights. The test is laid down in the Howard-Lebby case, supra.

After a survey of the insurance laws, particularly to such portions as deal with agents and agencies, we have reached the conclusion that the principles announced in the Board of Education of Ferguson School District v. Elliott case, supra, apply with equal force here, and that since both parties violated the provisions of the laws, they were in pari delicto; no advantage should be given the one over the other. The court under such circumstances will leave them where they placed themselves. Elsey v. People's Bank of Bardwell, 166 Ky. 386, 179 S. W. 392.

It should be noted that appellant, in the court be-

low, sued by way of counterclaim and set-off, thus indicating that its pleading was substantially a cross-action by defendant against plaintiff growing out of or connected with the subject matter of the original action. In its original petition appellee set up an account for premiums for policies written during 1936-37. In its final amended petition it showed that its account against appellant had been running from 1929 to and through 1939. If this be true, and it seems to be undenied, then there should be little doubt but that appellant was obtaining or endeavoring to obtain an undue advantage, since in the manner indicated it would have obtained all its insurance, without cost to it over the period. Such an arrangement would be in violation of the rebate statute, as almost universally construed. The statute forbids rebating either by the insurance company or agent.

Judgment affirmed.