## Tolliver v. Blizzard, Police Judge.

(Decided May 16, 1911.)

## Appeal from Carter Circuit Court.

Municipal Corporations—Police Power—Ordinance—Under the police power a municipal corporation can prohibit the sale of those drinks only which are harmful and deleterious to the public, or public morals. Therefore, an ordinance that prohibits the sale of harmless drinks is an unlawful interference with the liberty and property of the citizen and is void.

H. L. WOOD for appellant.

H. CLAY for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

This appeal involves the validity of the following ordinance, enacted by the city council of Olive Hill, a city of the fifth class:

"The City Council of the City of Olive Hill, Kentucky, do ordain as follows:

"That it shall be unlawful for any person or persons, corporations or firms, on and after the 17th day of May, 1910, to sell or conduct or operate a place for the sale, barter or loan, by retail or wholesale of any proprietary or soft drinks, except lemonade, milkshake, soda water labeled pop and coco cola, within the city limits of Olive Hill, Carter County, Kentucky

"Any person conducting or operating a place for the sale of the above-described soft drinks, before commencing the business of above mentioned,shall make his application in writing, and file with the clerk of said city, ten days before the meeting of said council, stating the kind of business he intends to engage in, the place and true name and address of applicant and all partners concerned in the intended business, said application to be read and acted upon by a majority of said city board, and the vote taken, yeas and nays, whether or not said license shall issue. The license fee for the sale of the above specified soft drinks, shall be five dollars per annum, payable in advance; the said city council reserves the right to reject or refuse to grant any or all licenses upon said application. If said council vote to grant said

license, then the city clerk of said city shall issue said license upon the license fee being paid to him which he shall turn over to the treasurer of said city and take his receipt for the same. Said city council reserves the right to have said places of business that are licensed by them, inspected by some one appointed by said board at any and all times they may desire, using so much of the soft drinks, or any drinks found in such places, and have same analyzed, and if any committee or inspector find any of said drinks containing alcohol or any per cent., they reserve the right to revoke any or all of said licenses by first paying back to said licensee his unearned money for the unexpired term of said license pro rata. Any or all other proprietary or so-called soft drinks, except what is mentioned in this ordinance, are by this ordinance prohibited from being sold in said city.

"Any person or persons, corporations, firms or individuals violating this ordinance, directly or indirectly, shall be deemed guilty of a misdemeanor, and upon conviction shall be fined, not less than twenty-five dollars ($25) nor more than one hundred dollars ($100) for each offense, and each sale shall be deemed a separate offense. The city council reserves the right to revoke the license of any person or persons, corporations or firm convicted of violating this ordinance. All other ordinances of said city of Olive Hill, in conflict with this ordinance, shall be and are hereby repealed by this ordinance."

The question arises in the following manner:

Appellant conducts a restaurant and soft drink stand in Olive Hill. He holds a license from the county clerk of Carter County, authorizing him to sell soft drinks. Among the drinks he sells are lemon sours, lemon sodas and malt mead.

On May 19, 1910, appellee, G. W. Blizzard, as police judge of Olive Hill, issued a warrant for appellant's arrest, charging him with a violation of the ordinance in question.

Alleging that the soft drinks which he was engaged in selling were non-intoxicating and that the ordinance in question was invalid for several reasons, and that appellee, unless restrained by the circuit court, would fine him and would continue to arrest and fine him for violating the ordinance, appellant brought this action in the Carter Circuit Court to obtain a writ of prohibition re-

straining appellee from trying him on the warrant referred to, or again arresting and trying him for violations of the ordinance in question.

The trial court being of the opinion that the ordinance was valid, sustained a demurrer to appellant's petition; and from an ordinance dismissing the petition, this appeal is prosecuted.

The method adopted by appellant for testing the ordinance in question is authorized by section 3639 of the Kentucky Statutes, which provides:

"The validity or constitutionality of any city ordinance, by-laws or rules of the fifth class cities, shall be tried by a writ of prohibition from the judge of the circuit court in which said city is located, wth right of appeal by either party to the Court of Appeals."

The sole question before us, then, is: Is the ordinance valid?

In the case of Bradford v. Jones, Police Judge, 142 Ky., 820, we recognized the right of municipal corporations to enact reasonable ordinances classifying soft drinks and to provide one license fee for soft drinks containing any per cent. of alcohol; and another license fee for the sale of those drinks containing no alcohol whatever. Here there is no attempt to classify soft drinks and to provide a certain license fee for one class, and another license fee for another class. By the ordinance in question, the sale of all soft drinks, except those enumerated, is absolutely prohibited. The question, then, is one of power. For appellee, it is insisted that the ordinance is authorized by section 3637, sub-section 7, of the Kentucky Statutes, relating to cities of the fifth class, which provides:

"To do and perform any and all acts and things necessary and proper to carry out the provisions of this chapter, and to enact and enforce, within the limits of such city, all other local police, sanitary and other regulations as do not conflict with general laws."

While it is true that the above section contains a broad grant of police power, it by no means follows that such power is unlimited. The rule is, that in order to sustain legislative interference with the business of the citizen, by virtue of the police power, the act or ordinance must have some reasonable relation to the subjects included in such power. If it is claimed that the statute

or ordinance is referable to the police power, the court must be able to see that it tends in some degree towards the prevention of offenses or the preservation of the public health, morals, safety or welfare. It must be apparent that some such end is the one actually intended, and that there is some connection between the provisions of the law and such purpose. If it is manifest that the statute or ordinance has no such object. but, under the guise of the police regulation, is an invasion of the property rights of the citizen, it is the duty of the court to declare it void. (City of Chicago v. Netcher, 183 Ill., 104.) The State, for the purpose of public protection, may, in the proper exercise of the police power, impose restrictions and regulations, but the right to acquire and dispose of property is subject only to that power. The individual may pursue, without let or hindrance from any one, all such callings or pursuits as are innocent in themselves and not injurious to the public. These are fundamental rights of every person living under this government. The Legislature can not by an enactment of its own interfere with such rights, nor can it authorize a municipal corporation to do so. (Frorer v. People, 141 Ill., 171; Ramsey v. People, 142 Ill., 380; Braceville Coal Co. v. People, 147 Ill., 66; Cooley's Const. Limitations, section 393.) In proportion to the severity or extent of the police power must the strict observance of the constitutional limitations upon the police power be required. The test in every case is: Is the prohibition of a particular business or the sale of a particular article necessary to prevent the infliction of a public injury? It is not sufficient that the public sustains harm from a certain trade or employment as it is conducted by some engaged in it. Because many men engaged in the calling persist in so conducting the business that the public suffers and their acts can not otherwise be effectually controlled, is no justification for a law which prohibits an honest man from conducting the business in such a manner as not to inflict injury upon the public. Therefore, the power of prohibition may not be invoked as to certain harmless drinks merely because certain persons, under the guise of selling such drinks, may sell intoxicating liquors. Where it is possible to conduct the business without harm to the public, all sorts of police regulation may be instituted which will tend to suppress the evil. A rigid system of inspection may be provided; and it may be made a con-

dition of the license that it shall be revoked in case the licensee violates the local option law. Thus the public may be protected from the acts of a violater of the law, while, at the same time, honest men may be protected in their right to pursue an innocent calling. (Tiedman's Limitations of Police Power, section 102.)

In the light of the foregoing principles, let us examine the ordinance. It specifies certain soft drinks which may be sold; the sale of all other soft drinks is prohibited. Among the number might be enumerated several soft drinks that are absolutely harmless. It will not do to say that the city council is the arbiter of public taste. It can not prescribe what harmless drinks shall, or shall not, be sold. Its power to prohibit is confined to those drinks which are harmful or deleterious to the public health and morals. The ordinance before us is not restricted in its application. It prohibits the sale of many harmless drnks, and is so broad in its scope and so discriminatory in its character as to constitute an unlawful interference with the liberty of the citizen, which includes not merely the right to acquire property, but the right to buy and sell it. That being true, we conclude the ordinance is unreasonable and void.

Judgment reversed and cause remanded for proceedings consistent with this opinion.