## Town of Whitley, et al. v. Stephens, et al.

(Decided May 16, 1919.)

### Appeal from McCreary Circuit Court.

1. Animals—Running at Large—Municipal Corporations.—Towns of the sixth class, under the provisions of subsection 7 of section 3704, Ky. Stats., have authority to enact ordinances forbidding the running at large of stock on the streets, ways and alleys in the corporate limits of the town.

2. Municipal Corporations—Ordinances—Signature.—The provision of a city charter requiring that ordinances shall be signed by the chairman of the board of trustees and by the clerk is sufficiently complied with by signing the next page of the record of the proceedings of the board at the top when the enacted ordinance takes up the entire preceding page.

3. Municipal Corporations—Ordinances—Validity.—There being nothing to show that the ordinance was not exacted at the regular meeting place provided by the board of trustees, the objection to its validity upon this ground can not be considered.

4. Animals—Running at Large—Ordinances.—An ordinance prohibiting the running at large of stock in the corporate limits upon the public streets and ways of the town may be enacted at a special meeting legally called for the purpose, since there is no charter requirement for it to be enacted at a regular meeting only.

5. Animals—Running at Large—Ordinances.—Where an ordinance requires that upon the apprehending of any stock forbidden to run at large within the corporate limits it shall be advertised for as much as five days, and if an owner is found that he shall receive notice before any judgment is given ordering a sale of the hogs as the ordinance prescribes; or, if no owner is found, the police judge to be required to post notices of the fact of the apprehending of the hogs as well as a description of them for five days before he renders such judgment, sufficiently provides for a judicial investigation and gives to the owner his day in court before forfeiting title to his property.

L. G. CAMPBELL for appellant.

H. M. CLINE, STEPHENS & CAYLOR and G. W. STEPHENS for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This litigation, which was set in motion by the appellees (plaintiffs below), assails the validity of an ordinance passed by the board of trustees for the city of Whitley on August 25, 1917, the purpose of which was to prevent the running of hogs at large within the cor-

porate limits of the town.   The trial court adjudged the ordinance to be invalid, and to reverse that judgment the defendants prosecute this appeal.

The ordinance reads: "An ordinance making it unlawful for hogs to run at large in the town of Whitley, and prescribing penalty therefor.

"Be it ordained by the board of trustees of the town of Whitley, Kentucky, as follows: That on and after the publication of this ordinance for 30 days from the date hereof it shall be unlawful for hogs, pigs or swine to run at large within the corporate limits of said town, and if any such hog or hogs, pig or pigs, be found running at large upon the streets, roads, alleys or public grounds of said town, or other officer upon behalf of said town by order of police judge of said town to do so to take such offending hog or hogs up, and place such in the stray pen, and immediately report same to the police judge of said town, and at once post up in three public places in said town the description of such hogs and make due inquiry to ascertain the name of the owner of such hog or hogs, and on and after such notice being given for five days, and no owner be found, it shall be reported to the police judge whose duty it shall be to issue and cause to be served upon (if found) the owner a process of an ordinary summons, warning him to appear within five days from the service of such summons, and claim such hog or hogs, and show cause, if any, why he should not be required to pay to said town the sum of fifty cents per day for each hog over six months old, and twenty-five cents for each pig under that age, and one dollar for the taking such hog or hogs up and impounding same, as a penalty therefor as above provided, for all of which the said town shall have a prior lien on all such hog or hogs, pig or pigs so taken up, if upon taking any offending hog or hogs up as above provided, and no owner be found, or person claiming such stray hog or hogs, after notice thereof for five days being published by order of the police judge as above provided, and it shall be lawful, and the duty of said court to enter up a judgment of his court enforcing the town's lien for costs and upkeep of such hog or hogs, and to sell same to satisfy said lien and costs at the rate for upkeep and taking such hog or hogs up, as above provided, and order a public sale of such offending hog or hogs to satisfy such lien and costs."

Five grounds are presented and urged as reasons why the ordinance is invalid, they being (1) that the town of Whitley, which is a city of the sixth class, has no authority under the powers conferred in charters for sixth class cities to enact it; (2) that it was not passed at a regular meeting of the board of trustees but at a special meeting called for that purpose, and (as contended only in the brief) that the meeting was not held at a regular meeting place fixed by the board of trustees; (3) that it was not signed by the chairman of the board nor attested by the clerk, as required by section 3700 of the Kentucky Statutes; (4) that there is no provision made for the disposition of the proceeds of sale of any hog which might be taken up under the ordinance after paying the expenses provided for therein, and (5) "because said pretended ordinance is unreasonable and oppressive, inasmuch as it discourages and interferes with the raising of hogs during the present urgent war needs."

Before taking up any of these grounds it might be well to state (a fact which is glaringly apparent) that the ordinance is very inartificially drawn. But, while this is true, the language used is sufficient to manifest the intention of the board of trustees in its enactment. When this appears in either a statute or an ordinance it will not be set aside as being invalid merely because the drafting was not done by skillful hands. Unless some other ground exists, the enactment will be upheld.

In support of (1), contention, that the town was without charter authority to enact the ordinance, it is insisted that the only provision in the charter of cities of the sixth class under which the authority to enact the ordinance is given, if at all, is subsection 7 of section 3704 of the Kentucky Statutes, which says that the board of trustees shall have power "to do and perform any and all other acts and things necessary or proper to carry out the provisions of this chapter, and to enact and enforce within the limits of such town all other local, police, sanitary and other regulations as do not conflict with general laws."

It is denied by plaintiffs that the quoted subsection confers upon the town any such authority. They argue that subsection ten of section 3637, being a part of the charter of cities of the fifth class, specifically confers upon cities of that class the power to enact ordinances of the character of the one here involved, while subsection

seven of the same section is a verbatim copy of the quoted subsection from charters of the cities of the sixth class, and if its terms are broad enough to confer such authority upon cities of the fifth class there was no necessity for the legislature to enact subsection ten of section 3637 in terms conferring such authority. The conclusion is sought to be drawn that the legislature construed the language in subsection seven to be insufficient to confer such authority upon the board of trustees of cities of the fifth class, and that inasmuch as there is no express authority in charters of cities of the sixth class corresponding to subsection 10, *supra,* with reference to cities of the fifth class, the legislature intended to withhold from cities of the sixth class the authority to pass such an ordinance. But such a conclusion does not necessarily follow. Subsection 10 referred to as part of the charter of cities of the fifth class is an enactment adopted by the legislature on March 16, 1906, and is chapter 43, Acts of 1906, page 278. The legislature, or the member who introduced the amendment, may have thought, and no doubt did think, that the authority of cities of the fifth class to pass such ordinances was doubtful, and to remove the doubt and make the matter clear the amendment was offered and adopted, but its enactment could not have the effect of restricting by implication the powers conferred by the charter as theretofore existing. Indeed, this court, prior to the enactment of the amendment (subsection 10, *supra*) in the case of Thompson v. Millen, 74 S. W. (Ky.) 288, held that subsection 7 above referred to as forming parts of the charters of cities of both the fifth and sixth classes conferred upon cities of the fifth class the authority to enact an ordinance prohibiting hogs from running at large upon the streets of the city of Elkton, a city of the fifth class. In the course of the opinion the court said:

"In several cases this court has held that under similar charter provisions the city council had authority to pass ordinances authorizing the sale of hogs impounded after a judicial determination by some court that they were running at large in violation of such ordinance. McKee v. McKee, 8 B. Mon. 433; Varden v. Mount, 78 Ky. 86. And in the case of Armstrong v. Brown, 50 S. W. 17 (106 Ky. 81) the question was very fully gone into and the conclusion reached that ordinances similar to those complained of in this action were valid."

That case is an express adjudication by this court that subsection 7 of section 3704 of the statutes at least impliedly confers authority upon the board of trustees to enact the ordinance in question, which disposes of the ground (1) adversely to plaintiffs' contention.

Briefly considering ground (2), we find nothing in charters of cities of the sixth class requiring an ordinance of this character to be enacted at a regular meeting, and the complaint that it was not enacted at a regular meeting place fixed by the board of trustees is made only in briefs of counsel. Nothing to sustain it is found in any pleading or in any other part of the record, so that we need give it no further consideration.

Ground (3) of complaint appears to have been abandoned, since it is not argued in appellants' brief. The only support for it at all is that the ordinance when copied in the record of the proceedings of the board of trustees completely filled one page, leaving no room for the chairman of the board or the clerk to sign their names, and such signatures were written at the top of the next or following page, immediately after which followed other proceedings of that meeting. We think this was a sufficient compliance with the section of the statute (3700) requiring ordinances in cities of the sixth class to be signed by the chairman and attested by the clerk, and that this ground is also without merit.

Ground (4) is really not presented by the record, since neither the proceeds nor any part of the proceeds of the sale of any hogs taken up under the ordinance is involved in the case. But we are not inclined to the opinion that the ordinance is void because it does not expressly provide what shall become of the proceeds of any sale made under the ordinance after the payment of cost and fees. If the ordinance went further and attempted to appropriate such excess proceeds, if any, in a way to deprive the owner of the hog from obtaining them, there might be room for contesting such portion of the ordinance as being invalid, but in the absence of such attempted disposal of the excess proceeds, they would remain the property of the owner of the hog sold, and if not voluntarily done he could enforce payment by appropriate proceedings.

It will at once appear that ground (5) urged as rendering the ordinance invalid presents a question beyond

the power of the courts to regulate. It raises more a question of expediency on the part of the board of trustees than one of power in the board to take the action complained of. We would gladly seize on the fact were it within our judicial cognizance and by our judgment assist in paving the way for a reduction in the present high prices of breakfast bacon and lard, or to assist in making it possible for us to get an occasional whiff of the frying ham as was our privilege of yore, but we are powerless to do so. But if our jurisdiction extended to the encouragement of the raising of hogs, either during the progress of war, or during times of peace, and to determine the validity of the ordinance with the accomplishment of that purpose in view, we could not do so in this case, for we are not informed wherein the ordinance would discourage that industry. It does not appear that within the boundaries of the town, from which territory only the hogs are excluded by the ordinance, is the only place in that community suitable for raising hogs or within which the industry can be successfully prosecuted. Nor does it appear that any of plaintiffs' hogs or those of others in the vicinity, if deprived of occasional visits to the city, or of the use of the streets of the town, would depart and go hence and become a permanent loss to their owners and to all others. So then, if we had authority to consider this phase of the case, we are without facts sufficient to enable us to do so, and are compelled therefore to dismiss this ground as not affecting the merits of the case.

Another question not presented or urged, but which arises on the face of the ordinance, is whether it sufficiently provides for a judicial forfeiture of the owner's title to the hogs which might be apprehended under the ordinance. The fact that there is no penalty provided against the owner (the only penalty being certain fees and costs for apprehending, ordering sold, selling and caring for the animals) cannot affect the case, since the validity of the ordinance is not dependent upon the mildness of the penalty which it provides.

It will be seen that the marshal of the town is authorized to apprehend any hog running at large in violation of the ordinance only after being ordered to do so by the police judge of the town. Upon doing so it is made his duty to advertise by written notice in three public places of the town a description of the hogs, which

notice shall be posted for as much as five days. After that time, if no owner is found, the fact of the taking up of the hogs, as well as a description of them, shall be advertised by the police judge for as much as five days, after which he shall enter an order directing the hogs to be sold and the accumulated fees and cost paid. If, however, the owner be found during the five days which the marshal is required to advertise the taking up of the hogs, notice shall be served upon him to appear and show cause why judgment may not be rendered directing the hog or hogs to be sold for the payment of the cost and fees. At that time the owner is given an opportunity to be heard. We think these proceedings fully comply with the legal requirement that a judicial investigation shall be had before the title of the owner to his property is forfeited. This question, upon almost the exact facts, was presented in the case of Armstrong v. Brown, *supra,* where only five days' notice (as is here provided) was required, and it was held to be reasonable and as fully complying with the law in demanding a judicial investigation in such cases. In disposing of the question the court in that case said:

"If the unknown owner was treated as a non-resident, and a warning order made for sixty or ninety days, the costs of keeping would often equal, if not exceed, the value of the property. So, from the very nature of the case, it is necessary, in the interest of the owner and the city, that the property should be sold as early as may be done, giving a reasonable opportunity to the owner to be heard, or, as commonly said, 'to have his day in court.'"

We therefore conclude that the ordinance can not be assailed upon the ground that it fails to provide for a judicial forfeiture of the owner's title to any animal found running at large contrary to its provisions. The cases referred to settle the questions involved and dispense with the necessity of further elaboration herein.

The judgment not conforming to the views herein expressed, is reversed, with directions to set it aside and to proceed in conformity to this opinion.