## Arms v. Town of Vine Grove.

(Decided May 16, 1924.)

### Appeal from Hardin Circuit Court.

1. Municipal Corporations—Statute Held General Grant of Police Power.—Ky. Stats., section 3704, subsection 7, is a general grant of police power to town trustees, subject only to limitation that its exercise shall not conflict with general laws.
2. Municipal Corporations—Town of Sixth Class May Prohibit Hurtful Callings.—Under Ky. Stats., section 3704, towns of sixth class may control and regulate callings hurtful to morals, health, or peace of society.
3. Municipal Corporations—Town of Sixth Class May Prohibit Pool Halls Notwithstanding General License Law.—Under Ky. Stats., section 3704, towns of sixth class have power to prohibit operation of poolrooms for hire without license, notwithstanding section 4224, prescribing state license tax on poolrooms.

GEO. HOLBERT for appellant.

L. A. FAUREST for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

Vine Grove is a municipality of the sixth class. Its board of trustees regularly enacted an ordinance making it unlawful to operate pool and billiard tables for hire

in the town without license, fixing the annual license fee at $125.00 for the first table and $25.00 for each additional table, and prescribing penalties for violation thereof.

Appellant was operating a pool room in the town at the time, and for two years thereafter he procured and paid for a license for tables operated by him, as provided by the ordinance. He then instituted this action to have the ordinance declared invalid, to recover the license fees paid thereunder, and to enjoin the city and its officials from enforcing the penalties of the ordinance against him for operating his pool room without a license, alleging as grounds therefor that the license fees are unreasonable, confiscatory, and prohibitive, and that the ordinance was enacted for the purpose of prohibiting the operation of pool rooms in the town. The lower court sustained a demurrer to and dismissed his petition, and he has appealed.

As the petition alleges, and the demurrer admits as true, that the fees are unreasonable, confiscatory, and prohibitive, it is obvious the ordinance and the lower court's action can be sustained only if trustees of such towns have the power to prohibit the operation therein of pool and billiard tables for hire.

Section 3704 of Kentucky Statutes enumerates their powers, which include (subsection 1) the power to impose license fees or taxes upon all trades, occupations, and professions, and the power (subsection 7) "To do and perform any and all other acts and things necessary or proper to carry out the provisions of this chapter, and to enact and enforce within the limits of such town all other local, police, sanitary and other regulations as do not conflict with general laws."

This latter section is very clearly a general grant of the police power, subject only to the limitation that its exercise within the town shall not conflict with the general laws, as has been held by this court in numerous cases, among which are Tolliver v. Blizzard, 143 Ky. 773, 137 S. W. 509; City of Monticello v. Bates, 169 Ky. 258, 183 S. W. 555; Town of Whitley v. Stephens, 184 Ky. 277, 211 S. W. 770; and Bradford v. Jones, 142 Ky. 820, 135 S. W. 290.

In the last named case we announced the following rule for determining when a municipal corporation with

like powers as Vine Grove could prohibit the sale of an article, or the operation of a business therein:

"When the police power can be invoked as authority for a municipal corporation to control and regulate the sale of an article, it may, if not forbidden by the statute, carry the right of control and regulation to such an extent as to prohibit the sale of it. Town of Pikeville v. Huffman, 112 Ky. 360; Commonwealth v. Payne Medicine Co., 138 Ky. 164. But when the police power cannot be invoked to control or regulate the sale of an article, and the authority to levy a tax upon its sale grows alone out of the right of the municipality to impose license fees for revenue purposes, the tax cannot be fixed at a prohibitive rate. Fiscal Court of Owen County v. F. & A. Cox Co., 132 Ky. 738; Hager v. Walker, 128 Ky. 1; City of Louisville v. Pooley, 136 Ky. 286."

Our question for decision then is, whether the operation of pool and billiard tables for hire is such a business as to justify its control and regulation by the police power of the state, and if so, whether its exercise as here attempted is in conflict with any general law.

1.   Counsel for appellant insist that to prohibit the operation of pool rooms in towns of the sixth class renders the ordinance in conflict with section 4224 of the statutes, which provides that before engaging in such business the person desiring so to do shall procure a license and pay the tax of $30.00 on the first table and $5.00 on each additional table therein prescribed.

This section, however, simply prescribes the state tax imposed upon a great many different kinds of businesses, and is not a declaration that such businesses may be operated at any place within the state, but only prescribes the license tax that shall be paid therefor where same may legally be operated.

That this is true is evident from the fact that cities of the third and fourth classes are given express authority to license or suppress the operation of pool and billiard tables for hire. Not only so, in Town of Pikeville v. Huffman, *supra*, we upheld an ordinance imposing a license fee of $200.00 upon the occupation of selling cider, and declared it valid without reference to whether or not the license fee was unreasonable or confiscatory, upon the ground that under the general grant of police power quoted above, the city could prohibit "those calli-

ings hurtful to the morals, the health, or the peace. of society.''

Pikeville was then a city of the sixth class, just as is Vine Grove now. The charter of such cities is the same now as it was then, in so far as here involved. There was then a state license tax upon the sale of cider, either as a soft drink or an intoxicant, just as there is now a state license tax upon the operation of pool and billiard tables. So that, although this latter fact was not referred to in the opinion, that case is upon all fours with this one—except as the two occupations may differ—and is authority that the mere fact the state imposed a license tax upon a business does not conflict with or render void a city ordinance prohibiting the operation of such business therein.

This case is also express authority that towns of the sixth class, under their charter grant of police power, may control, regulate, and prohibit ''those callings hurtful to the morals, the health, or the peace of society.''

In Standard Oil Co. v. Commonwealth, 119 Ky. 75, 82 S. W. 1020, it was held that a license fee might be imposed, under the police power, for the purpose of prohibition ''in cases of those pursuits or indulgences which in their general effect are believed to be more harmful than beneficial to society, and which consequently the public interest requires should be put an end to.''

These cases state, with sufficient precision for our present use, the rule for determining what businesses may be prohibited by a city in the exercise of its police power, and in the case of Tolliver v. Blizzard, *supra,* the rule is stated by which courts may determine whether a statute or ordinance is referable to the police power or is an unwarranted legislative interference with the business of a citizen. We there said:

''The rule is that, in order to sustain legislative interference with the business of a citizen by virtue of the police power, the act or ordinance must have some reasonable relation to the subjects included in such power. If it is claimed that the statute or ordinance is referable to the police power, the court must be able to see that it tends in some degree towards the prevention of offenses, or the preservation of the public health, morals, safety, or welfare. It must be apparent that some such end is the one actually intended, and that there is some connection between the provisions of the law and such purpose.''

The application of these rules of law, already approved by this court, to the common knowledge with reference to the business of operating pool rooms for hire, especially in small municipalities, necessarily in our judgment justifies the enactment, and sustains the validity of the ordinance here involved as a police measure, although the precise question has never before been presented to this court.   It has, however, been considered by many other courts, including the Supreme Court of the United States, which held in the case of Murphy v. People of California, 225 U. S. 623, that a similar ordinance, enacted under like authority, was valid.   In the course of the opinion, the court said:

> "Playing at billiards is a lawful amusement; and keeping a billiard hall is not, as held by the Supreme Court of California on plaintiff's application for *habeas corpus,* a nuisance *per se.* But it may become such; and the regulation or prohibition need not be postponed until the evil has become flagrant.
>
> "That the keeping of a billiard hall has a harmful tendency is a fact requiring no proof, and incapable of being controverted by the testimony of the plaintiff that his business was lawfully conducted, free from gaming or anything which could affect the morality of the community or of his patrons.   The fact that there had been no disorder or open violation of the law does not prevent the municipal authorities from taking legislative notice of the idleness and other evils which result from the maintenance of a resort where it is the business of one to stimulate others to play beyond what is proper for legitimate recreation.   The ordinance is not aimed at the game, but at the place; and where, in the exercise of the police power, the municipal authorities determine that the keeping of such resorts should be prohibited, the courts cannot go behind their findings and inquire into local conditions; or whether the defendant's hall was an orderly establishment, or had been conducted in such manner as to produce the evils sought to be prevented by the ordinance.   As said in Booth v. Illinois, 184 U. S. 425, 46 L. Ed. 623, 626, 22 Sup. Ct. Rep. 425:
>
> > " 'A calling may not in itself be immoral, and yet the tendency of what is generally or ordinarily or often done in pursuing that calling may be towards

that which is admittedly immoral or pernicious. If, looking at all the circumstances that attend, or which may ordinarily attend, the pursuit of a particular calling, the state thinks that certain admitted evils cannot be successfully reached unless that calling be actually prohibited, the courts cannot interfere, unless, looking through mere forms at the substance of the matter, they can say that the statute enacted professedly to protect the public morals has no real or substantial relation to that object, but is a clear, unmistakable infringement of rights secured by the fundamental law.' ''

To the same effect are In re Jones, 4 Okla. Cr. 74, 31 L. R. A. (N. S.) 550; Ex Parte Rowe (Ala.), 59 So. 69; Cole v. Village of Culbertson, 86 Neb. 160; Burlingame v. Thompson, 74 Kans. 393; State v. Haines, 30 Me. 75, 6 R. C. L. 220.

A contrary conclusion was reached in several cases from other courts cited by appellant, but in most if not all of them, because of peculiar limitations upon the grant of police power. However, even if the cases can not thus be distinguished, we regard our own cases with reference to the general subject in line with the Murphy and like cases, *supra,* and conclude the lower court correctly held the trustees of sixth class towns have the power under their charters to prohibit the operation of pool rooms for hire in such towns, and that the ordinance here is therefore valid.

The judgment is therefore affirmed.

The whole court sitting.