## City of Corbin, et al. v. Board of Education of City of Corbin, et al.

(Decided January 23, 1925.)

### Appeal from Whitley Circuit Court.

1. Taxation—Proceeding by Board of Tax Supervisors Held Valid, Though Performed by Quorum.—Where charter of city of third class provided for establishment of board of tax supervisors with enumerated power, but made no provision for a quorum to act, held that, in view of Ky. Stats., section 448, and Civil Code of Practice, section 679, providing that, where laws authorize three or more persons to act, it may be exercised by a majority of them, act of such board in supervising and correcting assessor's tax list was valid, though performed by a quorum.

2. Taxation—Action of Board of Tax Supervisors Final, Subject Only to Right of Appeal, when Authorized by Statute.—The jurisdiction of the board of tax supervisors is supervisory in its nature, and unless express authority should be conferred elsewhere, or board should act arbitrarily or fraudulently, its work in supervising tax list of assessor is final, subject only to right of aggrieved party to review its action in his case by some method provided by statute.

3. Taxation—City Council has Jurisdiction Only on Appeal from Board of Tax Supervisors by an Aggrieved Person.—Under Ky. Stats., section 3385, authorizing city council to make changes in report of board of tax supervisors as may be just and equitable, council's jurisdiction after board has reported, is exclusively appellate in its nature, and before it may act in such capacity there must be an appeal by an individual taxpayer, with clear right to invoke jurisdiction of council, and council cannot wholly ignore in toto report of board and adopt that of assessor.

TYE & SILER and J. B. WALL for appellants.

H. C. GILLIS for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Corbin, Kentucky, is a city of the third class. Its duly elected and qualified assessor listed in the regular way and at the proper time in 1924 the property therein subject to *ad valorem* taxes and which amounted to a total sum of $2,567,960.00. In due time and in strict accordance with the provisions of the charter for cities of that class, its mayor appointed, with the approval of the council, three qualified persons as the board of tax supervisors for the city. The board met as directed by the charter and had before it the assessor's list and un-

dertook to supervise it and correct it within the limitations of the powers conferred upon it. One of the appointed members acted for only a few days, and the other two continued to act until the work was finished, and they properly certified the result of their work to the city clerk as they are required to do by section 3385 of the 1922 edition of Carroll's Kentucky Statutes, being a part of the charter of cities of the third class, and he submitted the work to the city council, as prescribed in that section. The board deducted from the assessor's list, for causes not shown in the record, property to the value of $15,975.00, and assessed property omitted from the assessor's list to the amount of $180,610.00. It also increased the assessment of various lists in an aggregate amount of $1,875,216.00, making a net increase of taxable property in the city over that reported by the assessor of $2,039,851.00. At the first meeting of the city council after the clerk delivered to it the report of the board of supervisors, it, by a majority vote, rejected *in toto* the list as supervised by the board and adopted by the same vote the assessment returned by the assessor.

This equity action was instituted in the Whitley circuit court by the board of education of the city of Corbin and its individual members against the city council and the members composing it, as well as others of its officers, seeking to compel defendants by a mandatory injunction to set aside the orders of the council rejecting the report of the board of supervisors and adopting the assessment made by the assessor, and to compel defendants to recognize and adopt the supervised list as made by the board with such changes only as the council, under the provisions of the section of the statute, *supra,* may make within its powers therein conferred relative to the subject.

The interests of plaintiffs entitling them to maintain the action as stated in the petition, were that the report of the board of supervisors was and is correct and its valuation of the assessable property within the limits of the city did not exceed the reasonable market value of the assessed property at a fair voluntary sale and that the limits of the rate ($1.50 per hundred *ad valorem* and $1.50 poll) on the enumeration made by the assessor would not be sufficient to raise the amount of money necessary for the public schools of the city. It was also alleged in the petition that the school district had theretofore voted within the city limits bonds to the amount of

$75,000.00, and that all of them had not been issued, and it was necessary to issue another installment to raise funds with which to construct and repair school build-ings, but that no additional amount of the bonds could be sold, under the provisions of section 158 of the Consti-tution, if the assessor's list should prevail, since to do so would create a debt above the 2% limit fixed in that section, whereas if the enumeration made by the super-visors should prevail, such additional amount of bonds could be sold without conflicting with the provisions of that section.

Defendants demurred to the petition, which the court overruled, and they declined to answer or plead, and upon submission the court granted the prayer of the petition and perpetually enjoined defendants as asked, and to reverse that judgment they prosecute this appeal.

Two grounds are urged as errors, which are: (1), That a quorum of the board of supervisors is not author-ized to act because, as alleged, there is no provision in charters of cities of the third class with reference to such boards so authorizing, notwithstanding there are such provisions in cities of other classes, notably the first and second ones; and that since provisions were made in charters of those cities for a quorum to act and none made in the charter of third class cities, it was the in-tention of the legislature to withhold such power in the latter class of cities; and (2), that, under the provisions of section 3385, *supra,* of the statute, power is conferred upon the city council to do what it did in this case, which, it is insisted, is granted by the words therein "to make such changes in the assessment or valuation of any list as may be just and equitable." We will dispose of these two contentions in the order named.

1. If there was no other authority for so holding, we exceedingly doubt if the reasons urged in support of ground (1), are sufficient for the purpose, since it does not necessarily follow that the right of a quorum of a board to act in third class cities is denied from the mere fact that it is not expressly contained in the charters for that class and is contained in charters of other classes. We have had similar questions supported by similar rea-sons before us in prior cases, and have construed char-ters which were silent upon the point under considera-tion as conferring certain powers upon the council which were expressly stated in charters of other class cities,

and we held therein that while the omission of such powers was a fact that might be looked to in determining their existence or nonexistence, yet it was not conclusive. A case in point is that of Town of Whitley v. Stephens, 184 Ky. 277. In that case the validity of an ordinance forbidding the running of stock at large within the city limits was involved. It was insisted that the town of Whitley, which was a city of the sixth class, possessed no authority to enact such an ordinance because there was no express power given it in its charter, although such power was expressly given in fifth class cities; and the charters of the former class also contained general language substantially the same as is found in subsection 10 of section 3637, which is a part of the charters of the fifth class cities. It was held that under the general language the board of council of sixth class cities was authorized to enact the ordinance, notwithstanding the power was not expressly conferred but was so conferred in cities of the fifth class, and that the latter fact did not serve to curtail or withhold the power in sixth class cities.

But, independently of the foregoing reasoning, section 448 of our present statutes says: "Words purporting to give authority to three or more public officers or other persons shall be construed as giving such authority to a majority of such officers or other persons;" and section 679 of the Civil Code says: "An authority conferred by law on three or more persons may be exercised by a majority of them concurring; and an act directed by law to be done by three or more persons may be done by a majority of them concurring." In a note to both of these sections a number of cases from this court are cited, the latest of which is Carpenter v. Hale, 159 Ky. 465, wherein it was held that under the provisions of the two sections referred to a majority of the county board of election commissioners could canvass the returns and issue certificates, notwithstanding there was no express statutory provision to that effect; and the broad rule was therein stated that those two sections furnish authority for the action of a quorum of a board of ministerial officers "in the absence of a statutory provision to the contrary." We have no such statutory provisions with reference to the board of supervisors in third class cities, and it follows that the court correctly held that the work of the board in this instance, including its report, was

valid though done by a quorum. See also the case of
Ray v. Armstrong, 140 Ky. 800, on page 820, where the
provisions of section 448, *supra,* were held to govern the
actions of the old state board of equalization, although
there was no express provision in the statute creating it
so authorizing.

2.   Supervising or equalizing boards in the assess-
ment of property for taxation are parts of the machinery
created by law for arriving at the final assessment upon
which collections of taxes should be made. As the name
indicates, their jurisdictions is "supervisory" in its na-
ture and, necessarily, unless express authority should be
conferred elsewhere or the board should arbitrarily,
fraudulently and collusively act, its work in supervising
the tax list of the assessor is and should be final, subject
only to the right of the aggrieved party to review its ac-
tion in his case by some provided method of appeal to
a statutory tribunal of review. In stating the rule with
reference to the finality of the action of the board, with
the limitations recited above, the latest 1924 edition of
Cooley on Taxation, in vol. 3, section 1199, says:
"Boards of equalization act judicially in equalizing as-
sessments. Ordinarily the decision of a board of equal-
ization, in regard to equalizing the assessment as be-
tween different subdivisions, is final and conclusive, and
cannot be changed by another person or board, nor by
the courts except where there has been fraud or want
of jurisdiction or the like, or where statutes authorize
an appeal to a court from the decision of the board of
equalization. So it is binding on the assessor or other
local officer, so far as changes made or ordered are con-
cerned. In reviewing, so far as permissible, the acts of
a board of equalization, presumptions in favor of the
correctness of their acts will be indulged, and the discre-
tion of the board will not be controlled by the courts in
the absence of collusion or fraud. The burden is on the
objector to show the decision erroneous. The record of
the board of equalization should be liberally viewed by
the courts and given a construction that will uphold
rather than nullify the proceedings." In section 1201,
the learned author points out, as has been held by this
court in numerous cases, that the provided methods for
review are exclusive, and if not followed the assessment
by the board becomes conclusive. Of course the board
must have acted in such a manner as to give it jurisdic-
tion; otherwise its action is void and of course not con-

clusive. But, in the absence of a lack of jurisdiction, the only remedy of an aggrieved party is to pursue the appellate remedies provided by the statute where there was jurisdiction in the board and it was not guilty of fraud or collusion. In the case of Coulter, Auditor v. Louisville Bridge Co., 24 Ky. L. R. 809, in passing upon a similar question, we held "that when the proper assessing officers, within the time and substantially in the manner prescribed by statute, have acted in considering and fixing the valuation upon property liable to assessment for taxation and no relief has been obtained within the time allowed by statute for correcting their action, if erroneous, that action is final." See also the case of First National Bank v. Hopkinsville, 128 Ky. 383.

Necessarily the rule should be so, for if the governing power of the taxing authority could wholly ignore the work of the board in such matters and adopt *in toto* the assessment of the assessor which the board supervised, then the purpose of the legislature in providing for and creating the board could be set at naught and the governing authority become vested with power to repeal the statute upon the subject. It is, therefore, patent that the city council of Corbin in this case possessed no authority for the action it took, unless it is conferred by the above quotation from section 3385, *supra,* saying, "And the council shall have power to make such changes in the assessment or valuation of any list as may be just and equitable." In the absence of any qualifying words in the section, we would be unwilling to adopt the construction contended for by defendants without some specific complaint made to the city council with reference to a particular list or lists by some interested party in the way of an appeal to it. The quoted language vests no such sweeping authority in the city council to utterly ignore the entire report of the board, but only purports to vest it with the right to change any particular list "as may be just and equitable," which of course it cannot do unless application is made to it for the purpose, and then only upon facts justifying it. That interpretation is fortified by language immediately following, saying, "And any person aggrieved by any action of the assessor or supervisor may appeal to the council." So that the jurisdiction of the council after the board has reported to it is exclusively appellate in its nature and before it may act in such capacity, there must be an appellant, who should be the individual tax-

payer or some one manifesting a clear right to invoke the jurisdiction of the council.

The judgment being in accord with the above expressed views, it is affirmed.