A. G. BRUNER, Appellant,

v.

CITY OF DANVILLE, Kentucky, Appellee.

Court of Appeals of Kentucky.

Oct. 22, 1965.

Cecil C. Sanders, Lancaster, for appellant.

Donald Harkins, Danville, for appellee.

PALMORE, Judge.

This proceeding originated as a mandamus suit in the Boyle Circuit Court. Its purpose was to secure for the appellant, Bruner, a license to conduct public dances in the City of Danville. The only defendants named in the complaint were the mayor and one member of the city's common council. During the course of the litigation it was agreed that the city was the proper defendant, whereupon the city was substituted for the original defendants and its appearance was entered. After hearing the testimony of both sides concerning the manner in which Bruner's application for the license had been considered and the reasons for its rejection, the trial court gave judgment in favor of the city. Bruner appeals.

The fundamental question in the case is whether a city of the third class—or, for that matter, any city—can reserve to its governing body the discretion to grant or deny a license to conduct public dances without prescribing any standard with which applicants must comply or by which the discretion of the governing body is to be controlled.

■ An action for mandamus must be brought against the individual member or members of the agency whose actions are sought to be controlled. Lewis v. Board of Councilmen of Frankfort, 305 Ky. 509, 204 S.W.2d 813 (1947); Turner v. Department of Parole and Probation, Ky., 394 S.W.2d 889 (decided October 15, 1965). Since the members of the common council of Danville are not parties, mandamus will not lie.[1] However, the case has been practiced and was decided by the trial court on the merits, and in order to obviate useless circuity of action we have determined to avoid the procedural difficulty by treating it as an action for declaratory judgment rather than mandamus.

Danville's occupational license tax ordinance lists 126 activities for which licenses are required as a prerequisite of doing business. Except for the two categories "Dance Halls" and "Dances," for which it is provided without further qualification that the license is "to be issued only by the Common Council," the city tax collector issues any and all licenses simply upon application and payment of the prescribed fee.

Bruner makes a business of promoting dances, some public and some private. He had conducted a number of such activities in Boyle County and had several public dances at the Danville Armory, within the city, before it was brought to his attention that a license was required. When at the instance of the acting chief of police he applied for a license the application was rejected by the common council. He made two subsequent applications and was given a full public hearing by the council but in each instance was again denied, following which he filed this suit. From the evidence heard in the trial court it appears that the main reason for the negative attitude of the members of the council is that there has been a good deal of drinking and sporadic episodes of disorderly conduct at various dances held in the Armory, and the local police force is not adequate to provide special protection at these events.[2] Similar problems exist with regard to some of the private and semi-private dances (for which no municipal license or permit is required), but apparently not to the same degree as in the case of dances to which the general public is invited.

■ The second and perhaps pole star section of the Constitution of Kentucky proclaims that absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority. Just what act or threatened act of government would amount to an arrogation of such power is inevitably a judicial question. So it is, therefore, that in a variety of instances this court has struck down municipal legislation under which the granting of a license or permit was left substantially to the unlimited discretion of some officer or agency of the city, including the legislative body itself. Cf. Schneider v. Wink, Ky., 350 S.W.2d 504 (1961); Turner v. Peters, Ky., 327 S.W.2d 958 (1959); Parkrite Auto Park v. Shea, Ky., 235 S.W.2d 986 (1951); City of Pineville v. Helton, 300 Ky. 170, 188 S.W. 2d 101 (1945).

In Board of Trustees of Town of Bloomfield v. Bayne, 206 Ky. 68, 266 S.W. 885 (1924), an ordinance requiring a permit for the erection or alteration of a building was held invalid despite provision for certain standards to be observed by the board of trustees in passing on the application, because the criteria were too indefinite. In

---

1. The question evidently was not raised in City of Pineville v. Helton, 300 Ky. 170, 188 S.W.2d 101 (1945). For an excellent discussion, see State ex rel. Associated Holding Co. v. City of St. Joseph, 237 Mo.App. 399, 169 S.W.2d 419 (1943).

2. There was evidence also of illicit sales of liquor at public dances, though Bruner vigorously denied that this condition existed at any events conducted under his supervision. Danville and Boyle County are dry.

reaching this conclusion the court stated the dispositive principle as follows:

> "It is the established rule in this state that a city ordinance requiring a permit for the erection or alteration of a building which prescribes no standard with which the citizens must comply, or by which the discretion of those invested with the power to grant or refuse the permit is to be controlled, is arbitrary and invalid * * * if the requirements are so vague and indefinite as to make the question of compliance a mere matter of opinion, varying with the personnel of those charged with the duty of issuing the permit, it is at once apparent that the ordinance admits of the exercise, or the opportunity for the exercise, of arbitrary discrimination between citizens who comply with its provisions, and is therefore invalid."

But, says the city, those were "land use" cases, and they are different. Why? The freedom to engage in a lawful business is no less important, and indeed it would seem more essential to man's sustenance, than the liberty to utilize property as he sees fit. Certainly Section 2 of the Constitution applies to both. No authority is cited for the suggested distinction in degree of protection between the two, and we are confident there is none.

It is further contended that Schneider v. Wink, Ky., 350 S.W.2d 504 (1961), "deals exclusively with delegated legislative powers, while in the present case there is no delegation at all. * * * Here the Council held the legislative discretion firm to itself, and did not delegate it at all." We are unable to follow this argument, since in each of the two cases the ordinance purported to vest discretionary power to grant or refuse a license in the legislative body

of the city. Be that as it may, the ready answer is that a legislative body can neither delegate nor exercise in its own right a power it does not have, to-wit, an arbitrary power.

Though it is not entirely clear from the evidence whether any license to conduct public dances ever has been issued to anyone under the existing ordinance, we assume not. And it seems obvious that the membership of the common council is disposed to maintain the status quo until such time as in its judgment the circumstances then prevailing are sufficiently favorable to justify the holding of public dances in Danville. This amounts, of course, to a complete prohibition of public dances. The line of reasoning adopted by the trial court was that the city has the power of prohibition under KRS 85.150(5), which provides that the common council may by ordinance "license, tax, regulate, prohibit or suppress theatrical and other exhibitions, shows and amusements, within the city and within one mile of the city limits." [3]

We do not construe the statute as intending to authorize an absolute prohibition of any particular type of show or amusement that would be otherwise lawful, unless the circumstances are such that the restriction has a reasonable relation to the public safety, welfare or convenience. Cf. Marshall v. City of Louisville, Ky., 244 S.W.2d 755, 756 (1951). The reason for this construction is that the state cannot confer on a city any more authority in that respect than is embraced within its own police power. An exemplary statement of the principle appears in Tolliver v. Blizzard, 143 Ky. 773, 137 S.W. 509, 34 L.R.A., N.S., 809 (1911), a case in which the City of Olive Hill attempted to limit the kinds of soft drinks that could be sold within its corporate limits:

---

3. The city has power also to define and abate nuisances, KRS 85.180(1), but such power does not authorize a city "to declare that a nuisance which is not so in

fact." Cf. Village of Des Plaines v. Poyer, 123 Ill. 348, 14 N.E. 677, 5 Am.St. Rep. 524 (1888).

"The rule is that, in order to sustain legislative interference with the business of the citizen, by virtue of the police power, the act or ordinance must have some reasonable relation to the subjects included in such power. * * * The state, for the purpose of public protection, may, in the proper exercise of the police power, impose restrictions and regulations; but the right to acquire and dispose of property is subject only to that power. The individual may pursue, without let or hindrance from any one, all such callings or pursuits as are innocent in themselves and not injurious to the public. These are fundamental rights of every person living under this government. The Legislature cannot by an enactment of its own interfere with such rights, nor can it authorize a municipal corporation to do so. * * * In *proportion to the severity or extent* of the police power must the strict observance of the constitutional limitations upon the police power be required. The test in every case is: Is the prohibition of a particular business or the sale of a particular article necessary to prevent the infliction of a public injury? It is not sufficient that the public sustains harm from a certain trade or employment as it is conducted by some engaged in it. Because many men engaged in the calling persist in so conducting the business that the public suffers, and their acts cannot otherwise be effectually controlled, is no justification for a law which prohibits an honest man from conducting the business in such a manner as not to inflict injury upon the public. Therefore the power of prohibition may not be invoked as to certain harmless drinks, merely because certain persons, under the guise of selling such drinks, may sell intoxicating liquors. Where it is possible to conduct the business without harm to the public, all sorts of police regulation may be instituted, which will tend to suppress the evil. A rigid system of inspection may be provided; and it may be made a condition of the license that it shall be revoked in case the licensee violates the local option law. Thus the public may be protected from the acts of a violator of the law, while, at the same time, honest men may be protected in their right to pursue an innocent calling."

It may be conceded that there have always been certain kinds of activity which, though not harmful or offensive per se, can be not only regulated under the police power but, because of their "potential evil consequences," prohibited altogether. Thus in Arms v. Town of Vine Grove, 203 Ky. 213, 262 S.W. 11 (1924), and Botes v. City of Franklin, 203 Ky. 357, 262 S.W. 282 (1924), it was held that cities of the sixth and fourth classes respectively, could prohibit the operation of pool rooms. Public dance halls traditionally have been relegated to the same unenviable limbo, along with "traffic in intoxicating liquor, * * * pawnbroking, carnivals and shows." McQuillin, Municipal Corporations, §§ 2409, 2410 (Vol. 7, p. 32). See also annotations, *Public regulation of dancing, dance halls, dancing schools*, etc., 60 A.L.R. 173 and 48 A.L.R. 144. But we are of the opinion that the time has come when a more realistic view must prevail. In a city of the size and importance of Danville,[4] where private and semi-private dances are an established motif in the pattern of normal social life, to outlaw public dances completely would be unreasonable. They may be prohibited in certain areas, such as residential zones, and subjected to precautionary conditions, provided that such territorial and and other restrictions and requirements are reasonable and are set forth with substantial precision in the ordinance, but beyond

4. Danville is the county seat of Boyle County and according to the evidence has a population of about 10,000. Centre College is located within the city.

that the police power becomes indistinguishable from the police state.

The common council's refusal to exercise its authority to issue a license under the occupational license tax ordinance cannot be sustained on the ground that it has the still broader power of prohibiting the activity entirely, because section 2 of the Constitution denies it an absolute and arbitrary power of prohibition.

The cause is reversed with directions that a judgment be entered in conformity with this opinion.

MONTGOMERY, J., dissenting.

MONTGOMERY, Judge (dissenting).

In the first three paragraphs of the majority opinion it is made clear that the action under consideration is one seeking mandamus against a city. The individual members of the city government are not parties to the action. In the majority opinion it is held that such action will not lie against the city and must be brought against the individual members of the body, citing the Turner case so holding, decided October 15, 1965, on the basis of Lewis v. Board of Councilmen of Frankfort, 305 Ky. 509, 204 S.W.2d 813. See authorities cited therein.

The Lewis case is on all fours with the present case. In that case plaintiff sued the Board of Councilmen of the city without suing the individual members of the Board. A judgment denying mandamus was affirmed. Such should be the holding here. This case should have been decided in favor of the City of Danville on this basis and affirmed, instead of having been decided against the City and reversed. The decision constitutes a perversion of justice.

In my opinion the stated reasons for treating this as a declaratory judgment action and reaching a different result are not justified in the face of the established line of cases referred to and the principles contained therein.

For these reasons I dissent.