.U. S. MINING AND EXPLORATION
NATURAL RESOURCES CO.,
INC., Appellant,

v.

CITY OF BEATTYVILLE et
al., Appellees.

Supreme Court of Kentucky.

March 11, 1977.

Kendall Robinson, Booneville, for appellant.

Rose & Short, Beattyville, for appellees.

LUKOWSKY, Justice.

The issue to be resolved in this case is whether a city may within its corporation limits prohibit the construction and operation of a coal tipple. This is not a zoning case. The procedures delineated in KRS 100 et seq., for enacting zoning regulations were not followed by the city. Rather the city has attempted to outlaw coal tipples under its general police power.

The ordinance under consideration states:

WHEREAS, the city of Beattyville, Kentucky, that being the duly elected legislative body of said city and responsible for the general welfare of its city has determined that in order to adequately safeguard and promote the health, safety, and welfare of its citizens, that the exploration, mining, and marketing of any and all minerals and activities incident thereto shall be prohibited from being conducted in the corporate limits of the city of Beattyville, Kentucky.

Now, THEREFORE, be it ordained by the city council of the city of Beattyville, Kentucky as follows:

SECTION I: The exploration, mining and marketing of minerals within the corporate limits of the city of Beattyville, Kentucky, is hereby prohibited and any and all other activities which are incidental thereto or are in conjunction therewith, including, but not exclusive of, the building and erection of coal tipples and the operation, thereof, the drilling and erection of oil and gas wells and the stock piling and storing of same within said corporate limits of said city is also prohibited.

Section II provides criminal penalties for any person, firm or corporation that violates Section I.

The appellant, prior to the enactment of the ordinance, contracted with the L & N railroad to build a coal tipple adjacent to railroad tracks within the city of Beattyville. The appellant initiated this suit in the Lee Circuit Court seeking a declaratory judgment that the ordinance is unconstitutional, and has appealed from a judgment which upheld the ordinance. We reverse.

■ A municipal corporation, under its police power, has wide latitude to pass ordinances promoting the health, safety, morals, or general welfare of the people. However, a legislative body may not "under the guise of protecting the public, arbitrarily interfere with private business or prohibit lawful occupations or impose unreasonable or unnecessary restrictions upon them. The regulation of a lawful business is dependent upon some reasonable necessity for the pro-

tection of health, safety, morality, or other phase of the general welfare, and unless an act restricting the ordinary occupations of life can be said to bear some reasonable relation to one or more of these general objects of the police power, it is repugnant to constitutional guarantees and void." 16 Am.Jur.2d, Constitutional Law, Sec. 314; Ky.Const. Sec. 2.

■ There is no doubt that a legislative body can under its police power prohibit certain businesses. The test to be applied is whether the prohibition of a particular business is necessary to prevent infliction of a public injury. *Tolliver v. Blizzard*, 143 Ky. 773, 137 S.W. 509 (1911). Thus, this court has recently upheld against constitutional attack legislation which put an end to the private bail bonding business in Kentucky. *Stephens v. Bonding Ass'n of Kentucky*, Ky., 538 S.W.2d 580 (1976). The decision in that case was based upon the judicial and legislative recognition of the notorious inherent evils and abuses of privately operated bail bonding businesses which tarnished the image of Justice.

However, this court has refused to permit the abolition of a business where abolition was too drastic a solution of a legitimate problem. Thus public dances may not be completely banned. *Bruner v. City of Danville*, Ky., 394 S.W.2d 939 (1965). All businesses may not be required to close between midnight and 4 A.M. *City of Jackson v. Murray-Reed-Slone & Co.*, 297 Ky. 1, 178 S.W.2d 847 (1944). And a municipality may not prohibit the sale of "soft drinks." *Tolliver v. Blizzard*, supra.

■ It has been noted that in defining the limits of the police power "the touchstone is necessity and reasonable relationship. It is fundamental that such as [sic] extraordinary power is not without limitation, for it may not operate unreasonably beyond the occasion or necessity of the case." *Bond Bros. v. Louisville & Jefferson County Metropolitan Sanitation District*, 307 Ky. 689, 211 S.W.2d 867, 872 (1948). Moreover, as was noted in the *Tolliver* case, a business may not be outlawed merely

because some who engage in it will inflict injury upon the public.

From these principles we deduce that a municipality may not prohibit the construction and operation of a coal tipple unless such a drastic measure is necessary for the protection of the health, safety, or general welfare of the people. Put another way, the operation of a coal tipple must be a nuisance per se before the prohibition can be justified. See McQuillen, Municipal Corporations, sec. 24.325 (volume 7 at 213). If coal tipples become nuisances only when they are mismanaged, they are nuisances per accidens and not nuisances per se. *Board of Education of Louisville v. Klein*, 303 Ky. 234, 197 S.W.2d 427 (1946). As such, a coal tipple may not be shut down until it is found to be a nuisance in fact and that shutting it down is the only reasonable way of abating the nuisance.

This court has repeatedly held that a coal tipple is not a nuisance per se. *Strough v. Ideal Supplies Co.*, 300 Ky. 34, 187 S.W.2d 839 (1945); *Reynolds v. Community Fuel Co.*, 309 Ky. 716, 218 S.W.2d 950 (1949). Indeed with the economy of our state and the energy needs of our country so dependent upon the production and shipment of coal it seems unlikely that coal tipples will evolve into "nuisances per se" in the foreseeable future.

We are aware that coal tipples are dirty noisy places and that those in charge of them must exercise extreme care to limit the spread of coal dust and sound. For this reason the operation of coal tipples may be regulated by appropriate legislative bodies. Coal tipples may not be appropriate in many areas of a community, but this is a zoning problem. In the final analysis, we are not convinced that problems that coal tipples create can not be solved by a means less drastic than a blanket prohibition of their construction and operation. The ordinance is arbitrary and, therefore, unconstitutional.

We are also mindful that "it is within the province of the legislature to assimilate, consider, and weigh all the factors in the concept of public welfare". *Stephens v. Bonding Ass'n of Kentucky*, supra. However, a legislative finding of fact is not conclusive. If it were, limitations on the police power would be meaningless. See *Bruner v. City of Danville*, supra.

The judgment is reversed and the cause is remanded for the entry of a new judgment consistent herewith.

All concur except STEPHENSON, J., who dissents.